# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Garrido v. Arena*, 2013 IL App (1st) 120466

---

| | |
|---|---|
| Appellate Court Caption | JOHN GARRIDO, Plaintiff-Appellant, v. JOHN ARENA, CITIZENS TO ELECT JOHN ARENA, CHICAGO FEDERATION OF LABOR & IUC, COMCAST CORPORATION, SERVICE EMPLOYEES INTERNATIONAL UNION ILLINOIS COUNCIL PAC, and UNITE HERE LOCAL 1, Defendant-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-12-0466 |
| Filed | June 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in dismissing plaintiff's defamation action based on defendants' ads against plaintiff's candidacy for a position as an alderman on the ground that the action was barred by the Citizen Participation Act, since defendants failed to show that plaintiff's claims were meritless and therefore did not meet their burden of proving that the suit was a "SLAPP" action, but the cause was remanded for consideration of the other grounds for dismissal asserted by defendants. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-4012; the Hon. Michael R. Panter, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |

Counsel on Appeal — Lawrence Wolf Levin and Michelle M. Truesdale, both of Law Offices of Lawrence Wolf Levin, of Chicago, for appellant.

David T. Arena, of Dimonte & Lizak, LLC, of Park Ridge, for appellees John Arena and Citizens to Elect John Arena.

Laurence E. Gold, of Trister, Ross, Schadler & Gold, PLLC, of Washington, D.C., for appellee Unite Here Local 1.

Michael J. Kasper, of Chicago, Michael Kreloff, of Glenview, and Sally H. Saltzberg, of Lake Barrington, for appellee Service Employees International Union Illinois Council PAC.

Douglas N. Masters, Thomas P. Jirgal, and Stacy A. Howard, all of Loeb & Loeb LLP, of Chicago, for appellee Comcast Corporation.

Panel — JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Quinn and Simon concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff John Garrido lost the 2011 aldermanic election for Chicago's 45th Ward to defendant John Arena, who was backed in the campaign by the remaining defendants (with the exception of defendant Comcast Corporation). During the campaign, defendants disseminated campaign literature and advertisements that contained what plaintiff claims are outright lies. After losing the election, plaintiff filed this defamation lawsuit, but the circuit court dismissed the case under the Citizen Participation Act (735 ILCS 110/1 *et seq.* (West 2010)). We reverse and remand.

¶ 2                                   I. BACKGROUND

¶ 3    In 2011, plaintiff and Arena competed in a runoff election to become alderman for the 45th Ward. The campaign was hard fought and the election was extremely close, with Arena winning by only 30 votes in the official final tally. During the campaign, several organizations distributed campaign advertisements in support of Arena. Four of those organizations are defendants in this case: Service Employees International Union Illinois Council PAC (SEIU), Chicago Federation of Labor & UIC (CFL), Unite Here Local 1 (Local 1), and Citizens to Elect John Arena (CEJA). The fifth, defendant Comcast Corporation, is the parent company of the broadcaster that carried one of SEIU's television advertisements.

¶ 4    Plaintiff and Arena each won a plurality of the votes in the February 2011 general municipal election, but because neither won more than 50% of the total votes they were scheduled to compete in a runoff election to be held in April 2011. Arena and his supporters ran television advertisements and sent out direct mailings to the electorate in the hope of winning voters to their side. Some of the ads and mailings painted an unflattering picture of plaintiff.

¶ 5    Seven of these mailings and one television advertisement are at issue in this case. The ads presented two core allegations against plaintiff. First, the ads alleged that plaintiff had received money from a parking meter company that was involved in a highly publicized and much-debated privatization deal with the city of Chicago in early 2009. The ads essentially alleged that plaintiff had taken money from the company and insinuated that he had profited from the deal. For example, CFL sent out a mailer that featured plaintiff's picture superimposed over a parking meter alongside the words, "We pay. Republican John Garrido profits." Another ad from the same mailer contained the headline, "John Garrido Takes Money from Parking Meter Company. We Pay the Price." An ad sent out by SEIU stated, "Republican John Garrido took money from the company that brought us the parking meter deal." Another ad from CEJA claimed, "Republican John Garrido took campaign contributions from a firm that profited from the private parking meter deal." The same allegation appeared verbatim in an ad sponsored by Local 1.

¶ 6    Second, the ads alleged that, if elected, plaintiff would draw two municipal pension checks: one for his work as alderman and another for his previous career as a Chicago police officer, a practice that the parties refer to as "double dipping." The ads also implied that the practice was corrupt, or at least led to corruption. For example, one SEIU ad began, "If Republican John Garrido is elected, he will draw two city pensions–and you'll pay for both of them!" The ad continued, "With scandal after scandal plaguing our city, the last thing we need is another double-dipping, pension padding politician on the City Council." The other side of the mailer read, "After all the corruption scandals we've had, do we really want to give more tax dollars to John Garrido?" Another SEIU mailer featured the same allegations, with the reverse side featuring the headline "CORRUPTION," under which it stated, "City Hall's patronage and corruption take enough from us already. Do we really want to add another double-dipper to the mix?" Several other SEIU mailers made identical allegations.

¶ 7    Political considerations aside, plaintiff's chief complaint about these allegations is that, in his view, they were false. According to plaintiff's complaint, he never took any money from LAZ Parking, which is the primary company that was involved in the privatization deal. Moreover, plaintiff claims that he could not receive an aldermanic pension until he had served as an alderman for at least 10 years. Plaintiff sent several cease-and-desist letters to the various defendants asking them to stop disseminating what he considered to be false information, but the defendants declined to do so. After he lost the election, plaintiff filed this lawsuit, alleging defamation *per se* and *per quod*, as well as false light, seeking a minimum of $300,000 per count.

¶ 8    Defendants moved to dismiss, raising numerous grounds under sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2010)). The defendants also moved to dismiss under the Citizen Participation Act (735 ILCS 110/1 *et seq.* (West 2010))

(the Act). After full briefing by all parties, the circuit court found that the Act barred plaintiff's claims and dismissed the complaint. Plaintiff appealed.

¶ 9                                    II. ANALYSIS

¶ 10                                   A. Jurisdiction

¶ 11    Before reaching the merits, we must first discuss the issue of our jurisdiction over this case, which defendants have questioned due to a procedural irregularity in the circuit court. After the circuit court entered its judgment on September 16, 2011, plaintiff filed what purported to be a petition to vacate the judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). Plaintiff filed his petition on October 7, 2011, less than 30 days after the judgment. But section 2-1401 petitions can only be filed more than 30 days after the date of judgment, which is when the judgment becomes final. See *In re Haley D.*, 2011 IL 110886, ¶ 66. Realizing his mistake, plaintiff sought leave to amend his motion to reflect the correct statute, which is section 2-1203 (735 ILCS 5/2-1203 (West 2010)). The circuit court granted plaintiff's request to amend and plaintiff filed the amended motion on October 31, 2011. The circuit court ultimately denied the motion in an order on January 11, 2012. Plaintiff twice moved to reconsider but the circuit court declined in an order dated February 7, 2012, and plaintiff filed his notice of appeal on February 9, 2012.

¶ 12    Defendants now contend that plaintiff's notice of appeal was untimely because he did not file a proper postjudgment motion within 30 days of the judgment. See Ill. S. Ct. R. 303(a)(1) (eff. June 4, 2008). In defendants' view, plaintiff's original section 2-1401 motion was untimely because he filed it less than 30 days after judgment and his section 2-1203 motion was untimely because it was filed more than 30 days after judgment. Without a timely postjudgment motion, defendants argue, the time to file a notice of appeal ran 30 days after the September 9 judgment, making plaintiff's notice of appeal about five months late.

¶ 13    Defendants misconstrue both the nature of plaintiff's postjudgment filings and the standard by which the circuit court must evaluate postjudgment motions. Although defendants characterize plaintiff's October 31 section 2-1203 motion as an improper "second" postjudgment motion, the record shows that it was not. Rather, the new motion merely corrected the relevant statutory citations in the first motion. More importantly, even had plaintiff not filed an amended motion, the circuit court would in any event have been required to evaluate plaintiff's original October 7 motion under the correct section of the statute. See *In re Haley D.*, 2011 IL 110886, ¶ 67 ("[T]he character of the pleading should be determined from its content, not its label. Accordingly, when analyzing a party's request for relief, courts should look to what the pleading contains, not what it is called."). The only important fact for the purpose of our jurisdiction is that plaintiff filed a postjudgment motion within 30 days of the judgment, which tolled the time for filing a notice of appeal until the circuit court resolved the motion. See Ill. S. Ct. R. 303(a)(1) (eff. June 4, 2008). The circuit court did so when it denied plaintiff's postjudgment motion on January 11, and plaintiff filed his notice of appeal within 30 days of that order. The notice of appeal was therefore timely and we have jurisdiction over this case.

¶ 14                          B. Citizen Participation Act

¶ 15      The primary question in this case is whether the Act bars plaintiff's claims against
defendants. The Act is designed to protect defendants from what are termed "Strategic
Lawsuits Against Public Participation" (SLAPPs), which are "meritless lawsuit[s] utilized
to retaliate against a party for attempting to participate in government by exercising first
amendment rights such as the right to free speech or the right to petition." *Chicago Regional
Council of Carpenters v. Jursich*, 2013 IL App (1st) 113279, ¶ 15. "A SLAPP plaintiff's goal
is achieved not by success on the merits but by forcing defendants to expend funds on
attorney fees and litigation costs, thus discouraging them from pursuing their protests." *Id.*
To combat SLAPPs, the Act provides for expedited discovery and hearings on motions to
dismiss a case under the Act and awards of attorney fees and costs for successful movants.
See 735 ILCS 110/20, 25 (West 2010). A motion to dismiss a complaint based on immunity
under the Act is generally brought under section 2-619(a)(9) of the Code of Civil Procedure
(735 ILCS 5/2-619(a)(9) (West 2010)). See *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54.

¶ 16      SLAPPs are, however, very hard to distinguish from ordinary lawsuits. See *Sandholm*,
2012 IL 111443, ¶ 35 ("SLAPPs masquerade as ordinary lawsuits and may include myriad
causes of action, including defamation, interference with contractual rights or prospective
economic advantage, and malicious prosecution." (Internal quotation marks omitted.)). There
is a three-step analysis for determining whether a claim is in fact a SLAPP and should be
dismissed under the Act:

     "(1) the movant's acts were in furtherance of his right to petition, speak, associate, or
     otherwise participate in government to obtain favorable government action; (2) the
     nonmovant's claims are solely based on, related to, or in response to the movant's acts
     in furtherance of his constitutional rights; and (3) the nonmovant fails to produce clear
     and convincing evidence that the movant's acts were not genuinely aimed at solely
     procuring favorable government action." *Jursich*, 2013 IL App (1st) 113279, ¶ 17.

The movant bears the burden of proof under the first two prongs of the test, after which the
burden shifts to the nonmovant. See *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st)
120005, ¶¶ 21, 30.

¶ 17      The first prong of the analysis is the most straightforward. *Cf.*, *e.g.*, *Ryan*, 2012 IL App
(1st) 120005, ¶ 19 (televised investigatory news report); *Hammons v. Society of Permanent
Cosmetic Professionals*, 2012 IL App (1st) 102644, ¶ 22 (Internet message-board posting).
In fact, the parties here agree that defendants' actions were in furtherance of their first
amendment rights to "petition, speak, associate, or otherwise participate in government"
because the ads and mailers were an attempt to communicate with potential voters in a
political election. The Act itself defines "government" to include a "public authority
including the electorate." 735 ILCS 110/10 (West 2010). We have no trouble concluding that
defendants' ads and mailers are a protected activity under the Act.

¶ 18      As we have noted in previous cases, however, merely because a defendant's activity is
protected by the Act does not automatically mean that a plaintiff's claims must be dismissed
under the Act. See *Ryan*, 2012 IL App (1st) 120005, ¶ 20. In order to carry their burden under
the second prong, defendants "must affirmatively demonstrate that the [plaintiff's] claim is

a SLAPP within the meaning of the Act, that is, that the claim is meritless and was filed in retaliation against the [defendants'] protected activities in order to deter the [defendants] from further engaging in those activities." *Id.* ¶ 21; see also *Jursich*, 2013 IL App (1st) 113279, ¶ 20.

¶ 19    How to prove that a claim is "meritless" and "retaliatory" for the purpose of the Act is the central question in this case. The Act itself does not expressly contain this requirement, and the second prong of the test originated in *Sandholm*, which did not define these terms. See generally *Ryan*, 2012 IL App (1st) 120005, ¶¶ 20-21 (discussing *Sandholm*). Cases since *Sandholm*, however, have examined the issue and provide some guidance. A claim is not "meritless," for example, merely because the complaint is subject to dismissal under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)). See *Ryan*, 2012 IL App (1st) 120005, ¶ 22 (noting that *Sandholm* made clear that immunity based on the Act is an affirmative matter that is properly brought under section 2-619 rather than section 2-615); see also *Hammons*, 2012 IL App (1st) 102644, ¶ 21. However, a claim *is* "meritless" if a movant disproves some essential element of the nonmovant's claim. See, *e.g.*, *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 638 (2010) (plaintiff's defamation claim was meritless because defendant showed that allegedly defamatory statement was actually true); see also *Ryan*, 2012 IL App (1st) 120005, ¶ 29 (discussing *Wright*).

¶ 20    This is an important distinction that warrants discussion. The term "meritless" is often used loosely to describe any unsuccessful legal claim or theory, but in the context of a SLAPP it is a term of art and means something more. A SLAPP is not intended to make an injured plaintiff whole, but is instead meant only to hurt the defendant through "delay, expense, and distraction." *Sandholm*, 2012 IL 111443, ¶ 44; see also *Ryan*, 2012 IL App (1st) 120005, ¶ 13 ("[T]he defendants in such cases can be financially devastated by the costs of defending the suit or deterred into silence by the threat of the enormous monetary damages demanded by the plaintiffs."). The Act is expressly designed to bar only those lawsuits that try to abuse the justice system by bringing unfounded claims in retaliation against defendants who legitimately exercise their first amendment rights, while simultaneously preserving the right of individuals to file lawsuits for real injuries. See 735 ILCS 110/5 (West 2010). Yet it is impossible to determine whether a lawsuit is a SLAPP based solely on the face of the complaint because, when considering a motion to dismiss under section 2-615, we must presume that all well-pled facts in the complaint are true. Indeed, section 2-615 is concerned only with the legal sufficiency of the complaint's allegations (see, *e.g.*, *Country Mutual Insurance Co. v. Olsak*, 391 Ill. App. 3d 295, 301-02 (2009)), not with the factual question of whether the lawsuit was filed for the improper purpose of retaliating against a defendant for exercising some first amendment right.

¶ 21    This need to examine facts outside of the complaint is why the supreme court has specified that a motion to dismiss under the Act must be brought under section 2-619(a)(9) rather than section 2-615. See *Sandholm*, 2012 IL 111443, ¶ 54. The practical effect of this requirement is that a claim that may be legally insufficient under section 2-615 cannot be considered "meritless" for the purpose of the Act because a motion under section 2-619(a)(9) necessarily concedes the legal sufficiency of that same claim. See *id.* ¶ 55.

¶ 22    In this case, most of defendants' argument that plaintiff's claim is meritless is based on

perceived pleading deficiencies in the complaint. For example, defendants contend that plaintiff's alleged failure to adequately allege damages with particularity in support of his defamation *per quod* claim proves that his claim is meritless and retaliatory. See, *e.g.*, *Naleway v. Agnich*, 386 Ill. App. 3d 635, 638-39 (2008) ("In an action for defamation *per quod*, the plaintiff must plead and prove actual damages in order to recover."). Similarly, defendants contend that the allegedly defamatory statements do not fall into any of the recognized categories for defamation *per se*. See *id.* at 639 (listing the five types of statement that are defamatory *per se*). But by seeking to dismiss plaintiff's complaint pursuant to the Act under section 2-619(a)(9), defendants have conceded that plaintiff's complaint is legally sufficient. They accordingly cannot rely on these alleged pleading defects in order to carry their burden of proving that this case is a SLAPP.

¶ 23   But the situation is different when an essential element of the plaintiff's claim is affirmatively disproven because this shows the claim is factually baseless. In *Wright*, for example, the defendant showed that the allegedly defamatory statement was actually true. See *Wright*, 238 Ill. 2d at 638. Because falsity is an essential element of defamation, this was the key factor that the supreme court relied on in determining that the plaintiff's defamation claim was meritless. See *Ryan*, 2012 IL App (1st) 120005, ¶ 29 (discussing *Wright*).

¶ 24   Here, however, defendants effectively concede that the statements regarding double dipping are not actually true. Indeed, it would be hard to argue otherwise, given that the record clearly establishes that while plaintiff could theoretically receive both an aldermanic pension as well as his police pension at some point in the future, he would not even be eligible for an aldermanic pension until he had served as alderman for 10 years, an event that is not only speculative but that would be contingent on plaintiff winning at least two additional four-year terms as alderman. This is a far cry from the mailers' assertion that "[i]f [plaintiff] is elected, he will draw two city pensions." The record also provides no support for defendants' contention that the statements about the parking-meter deal are actually true. There is no evidence that plaintiff received campaign contributions from either LAZ Parking, which is the company responsible for the privatization deal, nor any evidence that he personally profited from the deal. Instead, defendants point to two $500 campaign contributions that plaintiff received from Juan Gaytan, who is the owner of a company called Monterrey Security, which was hired as a subcontractor to LAZ Parking. Yet the ads and mailers claimed that plaintiff "took money from the company that brought us the parking meter deal," and that he "took campaign contributions from a firm that profited from the private parking meter deal." Neither of these statements is actually true, given that the only campaign contributions that defendants have identified were individual contributions from Gaytan rather than corporate contributions from LAZ Parking or even Monterrey. Moreover, defendants have provided no evidence at all for the mailers' assertion that plaintiff profited from the parking-meter deal.

¶ 25   Even though defendants cannot show that the statements are actually true, they argue that the statements are nonetheless protected by several affirmative defenses. Defendants contend that they cannot be liable in this case because the statements were substantially true or are

conditionally privileged under the first amendment,[1] both of which are affirmative defenses.[2] See *Gist v. Macon County Sheriff's Department*, 284 Ill. App. 3d 367, 371 (1996) ("A defendant bears the burden of establishing the 'substantial truth' of his assertions ***."); *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 870 (1995) ("Privilege is regarded as an affirmative defense ***."). Defendants contend that because they are immune from liability due to these defenses, plaintiff's claim is therefore meritless.

¶ 26　　This argument squarely raises an issue that we left unsettled in *Ryan*: does an adequately proven affirmative defense render a claim "meritless" within the meaning of the Act? See *Ryan*, 2012 IL App (1st) 120005, ¶ 28 n.4. For the sake of argument, let us assume that defendants can prove that the allegedly defamatory statements are conditionally privileged because they are constitutionally protected under the first amendment. What does that say about the validity of plaintiff's claim? A successful affirmative defense merely "avoid[s] the legal effect of or defeat[s] the cause of action set forth in the complaint." 735 ILCS 5/2-613(d) (West 2010). In fact, "[t]he defense of privilege rests upon the idea 'that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection *even at the expense of uncompensated harm* to the plaintiff's reputation.' " (Emphasis added.) *Krueger v. Lewis*, 342 Ill. App. 3d 467, 473 (2003) (quoting Prosser and Keeton on Torts § 114, at 815 (W. Page Keeton *et al.* eds. 5th ed. 1984)). This is true of affirmative defenses in general, which evolved from the common-law plea of confession and avoidance and "which, as the term indicates, *confessed the validity* of the plaintiff's prima facie case but asserted new matter which *avoided* its legal effect." (Emphases added.) (Internal quotation marks omitted.) *Roy v. Coyne*, 259 Ill. App. 3d 269, 281 (1994).

---

[1]Defendants actually raise two separate arguments in their briefs, contending that they are immune from liability because (1) plaintiff is a public figure and he failed to adequately allege malice in the complaint, or alternatively (2) the statements were constitutionally protected opinion. Both of these contentions are merely aspects of the same qualified privilege under the first amendment. See generally *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381 (2008) (constitutional privilege); *Naleway*, 386 Ill. App. 3d at 639-40 (affirmative defenses to defamation).

[2]There is a quirk of defamation law that it is important to be aware of here. Most cases state that one of the elements of a defamation claim is that "the defendant made an *unprivileged* publication of that [defamatory] statement to a third party." (Emphasis added.) *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). But this is misleading. Because privilege is an affirmative defense, "there is no need for a plaintiff to plead facts showing that a communication is not privileged in order to properly allege a cause of action for defamation." *Quinn*, 276 Ill. App. 3d at 870; see also Restatement (Second) of Torts § 613(2) (1977) (defendant has "the burden of proving, when the issue is properly raised, the presence of the circumstances necessary for the existence of a privilege to publish the defamatory communication"). Thus, although publication to a third party is an essential element of a *prima facie* defamation claim, lack of privilege is not because the plaintiff must prove lack of privilege only in the event that the defendant raises that particular affirmative defense.

¶ 27    The emphasized language above is crucial because it means that an affirmative defense does not prove that a plaintiff's claim is meritless, but instead merely allows a defendant to avoid the legal consequences of a real injury to the plaintiff. Yet when determining whether a particular claim is a SLAPP, our analysis must remain focused only on the validity of the plaintiff's claim (see *Sandholm*, 2012 IL 111443, ¶ 53), not whether a defendant can escape liability for an otherwise meritorious claim by proving an affirmative defense. A real injury that the law provides a legal remedy for cannot be considered meritless, so we cannot presume that a successful affirmative defense renders a claim for such an injury "meritless" within the meaning of the Act. Thus, even if defendants can prove that the allegedly defamatory statements at issue in this case are substantially true or are constitutionally privileged, they still cannot carry their burden of showing that plaintiff's claim is meritless.

¶ 28    With that in mind, the only remaining way for defendants to prove that plaintiff's claim is meritless within the meaning of the Act is by disproving some essential element of plaintiff's *prima facie* case.[3] See *Ryan*, 2012 IL App (1st) 120005, ¶ 29. To establish a *prima facie* defamation claim, a plaintiff must show that a defendant publicized a false statement

---

[3]We have noticed an interesting procedural analogy that is worth mentioning, though we will not analyze it in depth here because other deficiencies in defendants' motion are sufficient to sustain our judgment. Because *Sandholm* requires us to focus solely on the validity of the plaintiff's claim, "meritless" and "retaliatory" in the context of SLAPPs may mean something akin to the analytical standard for imposing sanctions under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). Under that rule, a pleading is sanctionable if it is not "well grounded in fact" or warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," and is "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137 (eff. Feb. 1, 1994); *cf.* also *People v. Hodges*, 234 Ill. 2d 1, 11-17 (2009) (analyzing a comparable standard that applies to first-stage postconviction petitions). The purpose of Rule 137 is also very similar to that of the Act:

> "The purpose of the rule is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law. It is not intended to simply penalize litigants for the lack of success; rather, its aim is to restrict litigants who plead *frivolous or false matters without any basis* in law." (Emphasis added.) *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074 (1995).

Of course, there are distinct differences between how Rule 137 and the Act are applied. Rule 137 applies to all legal actions but the Act applies only to actions that involve first amendment activities. Moreover, even if a litigant can prove that the other party violated Rule 137, the circuit court has discretion over whether to impose sanctions for the violation. See *id.* In contrast, if a litigant proves that the other party's claim is a SLAPP and the other party fails to carry its own burden, then the circuit court *must* dismiss the claim and impose the penalties specified in the Act. See 735 ILCS 110/20(c), 25 (West 2010). The two motions therefore serve slightly different purposes and have slightly different procedures. Still, the analytical framework for evaluating a motion for Rule 137 sanctions may be useful for evaluating whether a claim is meritless and retaliatory under the Act. We take no position on that question one way or the other in this case, but it may be a useful line of inquiry in future cases given the current paucity of case law interpreting *Sandholm*'s analytical framework for motions brought under the Act.

that damaged the plaintiff's reputation. See *Maxon v. Ottawa Publishing Co.*, 402 Ill. App. 3d 704, 715 (2010). Damages are presumed if the statement was defamatory *per se*. See *id.* In this case, plaintiff has pled both defamation *per se* and *per quod*. Yet defendants concede the publication element, and they have offered no affirmative evidence showing that the statements were either actually true or did not damage plaintiff's reputation. Regarding the damages element, defendants merely argue that the complaint did not allege sufficient facts to support damages (in the case of defamation *per quod*), or that the statements are not defamatory *per se*. But these arguments implicate only the sufficiency of plaintiff's complaint, which defendants have conceded for the purpose of a motion to dismiss under section 2-619(a)(9).

¶ 29    The same is true of plaintiff's false light claim. The elements for a false light claim are that "(1) the plaintiff[ ] [was] placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiff[ ] [was] placed would be highly offensive to a reasonable person; and (3) the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kirchner v. Greene*, 294 Ill. App. 3d 672, 682 (1998). But defendants do not offer any evidence showing that any of these elements cannot be met. Instead, they only assert that the claim must fail because plaintiff's defamation claims are insufficient, or they quibble with whether the complaint alleges sufficient facts. Neither argument is sufficient to carry their burden under the Act.

¶ 30    Defendants have therefore not demonstrated that plaintiff's claims are meritless and thus have not carried their burden of proving that his lawsuit is a SLAPP. The circuit court was therefore incorrect[4] to dismiss the complaint under the Act. Based on this finding, we need not consider whether defendants have shown that plaintiff's lawsuit was retaliatory, nor whether plaintiff has met his own burden to show that defendants' actions "were not genuinely aimed at solely procuring favorable government action."

¶ 31    The circuit court dismissed this case based only on its finding that the Act barred plaintiff's claims. Defendants raised a number of other grounds to dismiss the complaint under sections 2-615 and 2-619, but the circuit court did not reach any of these alternatives. With one exception, which we discuss below, we therefore remand this case for consideration of the remainder of defendants' motions to dismiss.

¶ 32                        C. Personal Jurisdiction Over Comcast

¶ 33    Because the circuit court did not rule on the alternative grounds raised in defendants' motions to dismiss, we think it is appropriate to remand this case so that the circuit court can consider and rule on each of those issues in the first instance. But there is one issue regarding defendant Comcast that, in the interests of judicial efficiency, we will resolve now. See Ill.

---

[4]Although the circuit court's judgment was incorrect, it is important to note that the circuit court made its ruling before the supreme court issued *Sandholm* and changed the analysis for dismissal under the Act. The circuit court's memorandum order was in all other respects an excellent and well-reasoned application of the law as it stood before *Sandholm*.

S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).

¶ 34    In its original motion to dismiss before the circuit court and again on appeal, Comcast argued that the circuit court did not have personal jurisdiction over Comcast. See 735 ILCS 5/2-301 (West 2010). The circuit court did not reach this issue, choosing instead to defer adjudication on personal jurisdiction until after resolving the SLAPP portion of the motions to dismiss. In its motion, Comcast noted that, contrary to the complaint's allegations, Comcast was not licensed to do business in Illinois, which was plaintiff's sole basis for asserting long-arm jurisdiction over Comcast. Indeed, it appears that plaintiff has sued the wrong corporate entity. Comcast Corporation is merely a national holding company that does not do any business in Illinois. According to Comcast, the actual corporations that are responsible for delivery of cable advertisements in the target market for the election are Comcast of Florida/Illinois/Michigan, Inc., and Comcast Spotlight, LLC, both of which are subsidiaries of Comcast and are, in fact, Illinois entities.

¶ 35    A court cannot exercise personal jurisdiction over a parent corporate entity when the sole basis of jurisdiction is that a subsidiary of the parent does business in Illinois. See *Palen v. Daewoo Motor Co.*, 358 Ill. App. 3d 649, 660 (2005). While it is possible to exercise personal jurisdiction over a foreign corporation that "is, in effect, doing business through its subsidiary due to the high amount of control exhibited over its subsidiary" (*id.*), that is not what plaintiff has alleged in this case. Instead, the sole basis in the complaint for jurisdiction over Comcast is that Comcast is "authorized to do business in the State of Illinois with a registered office in Chicago, Cook County, Illinois." That is indisputably false, as Comcast pointed out in its motion and as can be easily confirmed via the Secretary of State's corporate registration database. See *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 938 (1998) (noting that "records from the Illinois Secretary of State's office *** are public records that this court may take judicial notice of"). This would ordinarily be a factual dispute that must be resolved by the circuit court during a hearing on the motion (see 735 ILCS 5/2-301(a), (d) (West 2010)), but plaintiff did not bother to address this issue in his response to Comcast's motion to dismiss below, nor did he address it when Comcast mentioned it on appeal. Plaintiff has therefore conceded the point. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008).

¶ 36    Although the circuit court did not resolve this issue, "we may affirm the judgment of the trial court on any basis in the record, regardless of whether the trial court relied upon that basis or whether the trial court's reasoning was correct." *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 734 (2009). There is no jurisdictional basis for including Comcast in this case on remand, so we affirm the circuit court's dismissal of the complaint as to Comcast.

¶ 37                                    III. CONCLUSION

¶ 38    We reverse the circuit court's order dismissing the complaint as barred by the Citizen Participation Act (735 ILCS 110/1 *et seq.* (West 2010)), and we remand for consideration of the remainder of the grounds raised in defendants' motions to dismiss. As to defendant Comcast only, we affirm the judgment of dismissal on the alternate ground of lack of

personal jurisdiction.

¶ 39        Affirmed in part and reversed in part; cause remanded with directions.