NOTICE

Decision filed 09/22/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190410-U

NO. 5-19-0410

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| FIRST FINANCIAL INVESTMENT FUND III, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-L-445 |
| | ) | |
| THERESA JOHNSON, | ) | |
| | ) | |
| Defendant and Counterplaintiff-Appellee | ) | |
| | ) | |
| (First Financial Investment Fund I, LLC; First | ) | |
| Financial Investment Fund II, LLC; First Financial | ) | |
| Investment Fund IV, LLC; First Financial Investment | ) | |
| Fund V, LLC; First Financial Portfolio Services LLC; | ) | |
| First Financial Investment Fund Holdings, LLC; | ) | |
| First Financial Asset Management, Inc.; Strategic | ) | |
| Alliances, Inc., d/b/a FFAM 360; Mary Maloney; | ) | |
| Robert Shlavoutis; Matthew Maloney; Velocity | ) | |
| Services; Verticon Technologies; and Community | ) | Honorable |
| Bank of Oak Park River Forest, Third-Party | ) | Christopher T. Kolker, |
| Defendants). | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court properly denied appellant's motion to dismiss where appellee's amended counterclaim and third-party complaint were not barred pursuant to the Citizen Participation Act (735 ILCS 110/1 *et seq.* (West 2014)).

1

¶ 2　　Appellee, Theresa Johnson (a/k/a Theresa A. Johnson) (hereinafter Theresa), filed a five-count amended counterclaim and third-party complaint (hereinafter collectively, amended counterclaim) in the circuit court of St. Clair County against appellant, First Financial Investment Fund III, LLC (First Financial). Theresa alleged various violations of the Collection Agency Act (CAA) (225 ILCS 425/1 *et seq.* (West 2014)), the Consumer Fraud and Deceptive Business Practices Act (CFA) (815 ILCS 505/1 *et seq.* (West 2014)), the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 *et seq.* (2012)), and the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 *et seq.* (2012)). In response, First Financial filed a motion to dismiss, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)), alleging that Theresa's amended counterclaim was barred by the Citizen Participation Act (Participation Act) (735 ILCS 110/1 *et seq.* (West 2014)). Following a hearing, the court denied First Financial's motion to dismiss.

¶ 3　　First Financial appeals the circuit court's denial of its motion to dismiss, pursuant to Illinois Supreme Court Rule 306(a)(9) (eff. Nov. 1, 2017), which allows a party to petition for leave to appeal to this court from a circuit court's order denying a motion to dispose under the Participation Act. On appeal, First Financial argues that the court erred in denying its motion to dismiss where Theresa's amended counterclaim was barred by the Participation Act, because it constituted a "Strategic Lawsuit Against Public Participation" (SLAPP). We affirm.

¶ 4                                    I. Background

¶ 5     This case has a six-year procedural history encompassing numerous disputed

matters that are largely irrelevant to the limited issue presented on appeal. Accordingly,

we provide only pertinent facts below.

¶ 6     On June 5, 2015, First Financial filed a small claims complaint (complaint) in the

circuit court of St. Clair County seeking a monetary judgment in the amount of $7524.41

for an alleged outstanding credit card debt owed by "Theresa Johnson." First Financial,

as the purported assignee of the credit card debt, alleged that "Theresa Johnson" had

failed to pay the amount owed after a "due demand" had been made. Shortly thereafter,

the St. Clair County Sheriff's Department received a summons and complaint for service.

¶ 7     On June 23, 2015, a deputy sheriff served Theresa with the summons and

complaint. The summons listed "Theresa Johnson" as the defendant and listed her

address as 1186 Division Avenue, East St. Louis, Illinois.[1] The affidavit of service listed

the person served as "Theresa A. Johnson," describing her as a 58-year-old black female.

Consistent with the summons, the affidavit listed Theresa's address as 1186 Division, E.

St. Louis, Illinois. That same day, Theresa telephoned the "Law office of Keith S.

Shindler, Ltd.," First Financial's legal representative, to inquire about the summons and

complaint. A transcript of a recorded telephone call with Greg, a non-attorney debt

---

[1]The supporting record is unclear as to whether First Financial prepared the summons. However, based on the preprinted language contained in the summons, it appears that it was prepared by First Financial. The summons contained the following preprinted language: "NOTICE TO PLAINTIFF OR PLAINTIFF'S ATTORNEY: *When preparing the above SUMMONS*, the return date, which will be not less than 21 nor more than 40 days after the date of issuance of summons, will be set by the Clerk of the court at the time of filing the Complaint." (Emphasis added.)

collector, revealed that Theresa had in fact been served, but that First Financial's claim was against "Theresa N. Johnson," not Theresa A. Johnson. After determining that the wrong person had been served, based on differences in age and social security numbers, Greg informed Theresa to "go ahead and disregard[,] *** we'll go ahead and update it on our end."

¶ 8 In July 2015, Theresa, through her attorneys, filed an answer to the complaint, a motion for class certification, and a counterclaim-class action (counterclaim). In her pleadings, Theresa identified herself as the "Defendant/Counter-Plaintiff."[2] In her answer, Theresa admitted that a debt was owed to First Financial as assignee, but she denied entering into a credit card agreement with First Financial or failing to pay the amount owed following a due demand. The counterclaim alleged, *inter alia*, violations of various statutory provisions under the CAA, CFA, and FDCPA as a result of First Financial having attempted to collect an alleged debt claimed to have been incurred by Theresa for personal, family, or household purposes and then filing suit against Theresa to collect the purported debt. Additionally, Theresa claimed that First Financial had failed to support its allegations and to attach necessary supporting documentation to its

---

[2]First Financial asserts that Theresa is not a defendant in this matter, thus, her pleading is not a counterclaim as defined by section 2-608 of the Code. See 735 ILCS 5/2-608(a) (West 2014) ("Any claim by one or more defendants against one or more plaintiffs *** shall be called a counterclaim."). We note, however, that on February 2, 2017, the circuit court determined Theresa fit the class definition as defined in the counterclaim, which includes "all individuals that have been *a defendant* in a collection lawsuit that was filed by First Financial *** or have been threatened with a lawsuit by First Financial." (Emphasis added.) In addition, Illinois Supreme Court Rule 330(a)(3) (eff. July 1, 2017) mandates that the caption of the case on review appear the same as the caption at the circuit court level, except that the status of each party shall also be indicated in the reviewing court (*e.g.*, plaintiff-appellant). Additionally, Illinois Supreme Court Rule 341(f) (eff. May 25, 2018) mandates that the parties' briefs "shall be referred to as in the trial court, *e.g.*, plaintiff and defendant, omitting the words appellant and appellee and petitioner and respondent."

4

complaint. In her motion for class certification, Theresa requested to be made the class representative of the national and Illinois subclasses.

¶ 9 On July 14, 2015, the circuit court entered an order quashing service on Theresa and permitting an alias summons to issue upon First Financial's request. In response, Theresa's legal counsel filed a motion to reconsider, requesting the circuit court to vacate its order, which the court did on July 23, 2015, following a hearing. The court also directed counsel for First Financial to file a responsive pleading to address "the issue of the correctly named defendant."

¶ 10 On July 31, 2015, First Financial filed a motion to quash the June 23, 2015, service of summons, asserting that the recorded telephone call between Theresa and Greg demonstrated that Theresa was not the "proper defendant" in the matter. In response, Theresa filed a motion in opposition, alleging that First Financial "provided no evidence that they did not intend to sue [Theresa]."

¶ 11 On March 15, 2016, First Financial filed a motion to voluntarily dismiss the case without prejudice because First Financial no longer wished to proceed with the cause of action against Theresa. Additionally, First Financial filed a motion to realign the parties, pursuant to section 2-407 of the Code (735 ILCS 5/2-407 (West 2014)), with the caption on the counterclaim to include First Financial as defendant and Theresa as plaintiff.[3]

---

[3]The counterclaim was the only outstanding claim on March 15, 2016.

Shortly thereafter, the circuit court granted First Financial's motion to voluntarily dismiss without prejudice but denied the motion to realign the parties.[4]

¶ 12    On June 22, 2016, First Financial filed a motion to dismiss and strike Theresa's counterclaim, pursuant to section 2-615 of the Code, arguing that Theresa was not a consumer, thus, her allegations of violations of consumer protection statutes were inapplicable. In support, First Financial claimed "[t]his case arises from a classic example of mistaken identity," and the facts applicable to Theresa's case are not representative of the national and Illinois subclasses. The motion to dismiss further stated:

> "[First Financial] sought to file and serve a collection action against a woman named Theresa Johnson, of which there are several in St. Clair County alone. As a result of an inadvertent mistake, the wrong Theresa Johnson was served."

¶ 13    On February 2, 2017, the circuit court entered an order, *inter alia*, denying First Financial's motion to dismiss and strike Theresa's counterclaim. In denying the motion, the court determined the following: (1) Theresa fit the class definition as defined in the counterclaim; (2) the CAA was applicable because it "applies to anyone who is *alleged* to owe a debt" (emphasis in original), and Theresa was sued by First Financial as an individual that allegedly owed First Financial a credit card debt; (3) the CFA was applicable because Theresa was not required to be a consumer to rely on its provision; and (4) Theresa fit the definition of a consumer under the FDCPA, which includes any natural person "obligated or allegedly obligated" to pay any debt.

---

[4]A transcript of the proceedings is not contained in the supporting record. Additionally, the circuit court's written order neither provides reasoning for its rulings nor addresses First Financial's July 31, 2015, motion to quash service.

¶ 14   On April 30, 2019, after several hearings concerning disputed discovery matters spanning more than two years, Theresa filed a motion for leave to file an amended counterclaim to add 14 third-party defendants.[5] The circuit court subsequently granted Theresa's motion on May 13, 2019.

¶ 15   On June 14, 2019, Theresa filed her amended counterclaim, titled: "COUNTERCLAIM AND THIRD-PARTY COMPLAINT-CLASS ACTION," listing 14 third-party defendants.[6] The amended counterclaim alleged the same facts specific to Theresa as alleged in the July 2015 counterclaim and included the same summary of allegations contained in First Financial's June 5, 2015, complaint. In addition, Theresa asserted the following allegations against First Financial and all named third-party defendants: (1) civil conspiracy to effectuate a common scheme to accomplish an unlawful practice; (2) violations of the CAA by filing suit without an assignment in the specified form and attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy did not exist; (3) violations of the CFA through unfair and deceptive practices; (4) violations of the FDCPA where defendants

---

[5]The named third-party defendants are First Financial Investment Fund I, LLC; First Financial Investment Fund II, LLC; First Financial Investment Fund IV, LLC; First Financial Investment Fund V, LLC; First Financial Portfolio Services LLC; First Financial Investment Fund Holdings, LLC; First Financial Asset Management, Inc.; Strategic Alliances, Inc., d/b/a as FFAM 360; Mary Maloney; Robert Shlavoutis; Matthew Maloney; Velocity Services; Verticon Technologies; and Community Bank of Oak Park River Forest.

[6]Theresa later filed a "VERIFIED AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT-CLASS ACTION" as well as a motion for a temporary restraining order on September 11, 2019. According to First Financial's brief, the court entered a temporary restraining order on October 31, 2019, enjoining First Financial Portfolio Services, LLC (a third-party defendant) from engaging in debt collection activity for 10 days. We note that the October 31, 2019, order is not contained in the supporting record and is not on appeal. While Theresa's motion for preliminary injunction was pending, this court granted First Financial leave to appeal, thereby staying the proceedings on the motion for preliminary injunction pursuant to Illinois Supreme Court Rule 306(c)(6) (eff. Oct. 1, 2019).

filed and engaged in deceptive collection practices with the hope that the consumer would not realize a complete defense to the collection of the debt existed; (5) unlawful actions constituted a public nuisance; and (6) unlawful actions constituted racketeering activity under RICO. On the same day, Theresa also filed a motion for preliminary injunction requesting the circuit court enjoin First Financial and all third-party defendants from engaging in further debt collection activities.

¶ 16    On August 5, 2019, First Financial filed a motion to dismiss, pursuant to section 2-615 of the Code, asserting that Theresa's amended counterclaim was barred by section 15 of the Participation Act (735 ILCS 110/15 (West 2018)).

¶ 17    On August 6, 2019, Theresa filed a Rule 237 notice to appear (see Ill. S. Ct. R. 237 (eff. July 1, 2005) (designating the person required to appear at trial or other evidentiary hearing and the documents to produce)), directing First Financial to produce officers, directors, or employees capable of answering business-related questions concerning business practices and relationships at a hearing on August 28, 2019. Shortly thereafter, on August 21, 2019, First Financial filed a motion to strike Theresa's Rule 237 notice to appear, arguing the circuit court had previously set pending matters for argument, not an evidentiary hearing, on that date.

¶ 18    On August 28, 2019, the circuit court held a hearing on First Financial's August 5, 2019, motion to dismiss, August 21, 2019, motion to strike, and other ancillary issues.

Following arguments of counsel, the court denied First Financial's motion to dismiss.[7] The court further ruled that the matter would proceed on the issue of Theresa's request for a preliminary injunction filed on June 14, 2019.

¶ 19    On September 26, 2019, First Financial motioned this court for an extension of time to file a petition for leave to file an interlocutory appeal pursuant to Illinois Supreme Court Rule 306(a)(9) (eff. Nov. 1, 2017), which this court granted. On October 11, 2019, First Financial timely filed its petition for leave, which was granted by this court on November 13, 2019. This interlocutory appeal, with First Financial electing to file briefs rather than to stand on the petition for leave, followed.

¶ 20                                II. Analysis

¶ 21    First Financial argues that it is immune from liability under section 15 of the Participation Act because the acts alleged in Theresa's amended counterclaim were in furtherance of its rights to petition, speak, or otherwise participate in government in order to obtain favorable governmental action. Therefore, First Financial requests this court to reverse the circuit court's order denying its August 5, 2019, motion to dismiss. Before addressing the merits, we set forth the applicable standard of review and legal framework guiding our analysis.

¶ 22                            A. Standard of Review

¶ 23    We initially note that First Financial filed the motion to dismiss under section 2-615 of the Code but then relies on the immunity conferred by the Participation Act (735

_____

[7]The portions of the circuit court's order involving First Financial's August 21, 2019, motion to strike and the other ancillary issues are not part of this appeal and, therefore, are omitted from our recitation of the facts.

9

ILCS 110/15 (West 2018)). A section 2-615 motion challenges the legal sufficiency of the complaint and asserts that the complaint fails to state a cause of action upon which relief can be granted. *Johannesen v. Eddins*, 2011 IL App (2d) 110108, ¶ 27. However, section 2-615 does not apply to a motion to dismiss based on the Participation Act, as "it is impossible to determine whether a lawsuit is a SLAPP based solely on the face of the complaint because, when considering a motion to dismiss under section 2-615, [the court] must presume that all well-pled facts in the complaint are true." *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 20.

¶ 24   Conversely, our supreme court has determined that "[a] motion to dismiss based on the immunity conferred by the [Participation] Act, however, is more appropriately raised in a section 2-619(a)(9) motion [(735 ILCS 5/2-619(a)(9) (West 2018))]." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54. A section 2-619 motion "admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim." *Id.* ¶ 55. Where the nonmoving party has not been prejudiced by the motion to dismiss having been filed under section 2-615, a reviewing court may treat the assertions of immunity as appropriately filed under section 2-619(a)(9) of the Code. *Id.* ¶ 54.

¶ 25   "In ruling on a motion to dismiss under section 2-619, the [circuit] court may consider pleadings, depositions, and affidavits." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). "[T]he court should construe the pleadings and supporting documents in the light most favorable to the nonmoving party." *Sandholm*, 2012 IL 111443, ¶ 55. "When supporting affidavits have not been challenged or contradicted by counter-affidavits or

10

other appropriate means, the facts stated therein are deemed admitted." *Zedella*, 165 Ill. 2d at 185. Where, as here, the circuit court based its denial of First Financial's motion to dismiss on a question of law by construing the Participation Act, the applicable standard of review is *de novo.* See *Samoylovich v. Montesdeoca*, 2014 IL App (1st) 121545, ¶ 18 ("Because the circuit court based its denial of [the] motion [to dismiss] on its interpretation and application of the [Participation] Act, a question of law exists and a *de novo* standard of review applies."). However, we review the court's factual findings under the manifest weight of the evidence standard. *Midwest REM Enterprises, Inc. v. Noonan*, 2015 IL App (1st) 132488, ¶ 63.

¶ 26                              B. Limited Scope of the Participation Act

¶ 27    The Participation Act, also known as the anti-SLAPP statute, provides that "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15 (West 2014). According to the Participation Act, "government" includes any "branch, department, agency, instrumentality, official, employee, agent, or other person acting under color of law of the United States, a state, a subdivision of a state, or another public authority including the electorate." *Id.* § 10. The Participation Act was enacted to protect citizens and organizations from "lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so." (Internal quotation marks omitted.) *Sandholm*, 2012 IL 111443, ¶ 33. A SLAPP is intended to chill speech or protest activity and discourage opposition, through delay,

11

expense, and distraction. *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 12. A SLAPP plaintiff's goal is achieved not by success on the merits but by forcing defendants to expend funds on attorney fees and litigation costs, thus discouraging them from pursuing their protests. *Sandholm*, 2012 IL 111443, ¶¶ 34-35; *Chicago Regional Council of Carpenters v. Jursich*, 2013 IL App (1st) 113279, ¶ 15. "The Act further identifies a SLAPP as an abuse of the judicial process which can and has been used as a means of intimidating, harassing, or punishing citizens and organizations for involving themselves in public affairs." (Internal quotation marks omitted.) *Sandholm*, 2012 IL 111443, ¶ 43.

¶ 28    The analysis for determining whether a lawsuit constitutes a SLAPP and should be dismissed under the Participation Act had three prongs:

> "(1) the movant's acts were in furtherance of his right to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) the nonmovant's claims are solely based on, related to, or in response to the movant's acts in furtherance of his constitutional rights; and (3) the nonmovant fails to produce clear and convincing evidence that the movant's acts were not genuinely aimed at solely procuring favorable government action." *Jursich*, 2013 IL App (1st) 113279, ¶ 17.

"The movant bears the burden of proof under the first two prongs of the test, after which the burden shifts to the nonmovant." *Garrido*, 2013 IL App (1st) 120466, ¶ 16 (citing *Ryan*, 2012 IL App (1st) 120005, ¶¶ 21, 30). Based on these well-established principles and analytic framework, we turn our attention to the merits of First Financial's motion to dismiss.

¶ 29    In the instant case, First Financial must first establish that its acts were in furtherance of its rights to petition, speech, associate, or otherwise participate in government to obtain favorable government action. First Financial argues that its act of filing a lawsuit was in furtherance of its right to otherwise participate in government to obtain a favorable government action where the judicial branch is "encapsulated in the term 'government,' " as defined in section 10 of the Participation Act (735 ILCS 110/10 (West 2014)). First Financial supports its argument by citing to one case, *Dobbey v. Illinois Department of Corrections*, 574 F.3d 443 (7th Cir. 2009), as authority that all lawsuits are protected by the first amendment. We find First Financial's reliance on *Dobbey* misplaced because (1) the facts in *Dobbey* are vastly different than those in the case at hand, and (2) the Seventh Circuit made no such broad pronouncement concerning the first amendment. To the contrary, while noting that "[t]here is considerable authority *** that the filing of *any* lawsuit is protected by the First Amendment as a form of petitioning [the] government for the redress of grievances," the Seventh Circuit reiterated that it holds a narrow view of this right and further noted that "the right is little discussed either in cases or in commentaries [citation], and its scope is unsettled." (Emphasis in original.) *Id.* at 446. Furthermore, the Seventh Circuit emphasized its earlier statement that "a private office dispute cannot be constitutionalized merely by filing a legal action." (Internal quotation marks omitted.) *Id*. at 446-47.

¶ 30    In *Dobbey*, a black prisoner alleged that a white prison guard hung and swatted at a noose from the ceiling while other guards were playing cards in the main control room. *Id*. at 444. Although the noose was removed within 20 minutes, the prisoner filed a

13

grievance claiming he feared the guard would " 'snap' " and cause him physical injury. *Id*. at 445. The next day, the prisoner sent letters to news outlets and various state officials describing the incident. *Id*. A month later, a prison disciplinary charge was filed against the prisoner for allegedly disobeying a guard's order to scrape wax off a prison floor. *Id*. A disciplinary committee upheld the charge and imposed various sanctions on the prisoner, including the loss of his prison job as a janitor. *Id*. The prisoner was later informed that the prisoner's grievance had been denied because " 'there was no evidence of the noose.' " *Id*. The prisoner filed a civil rights lawsuit. *Id*. The district court dismissed the claim, concluding that the prisoner had failed to state a claim against the prison personnel. *Id*. at 444.

¶ 31    On appeal, the Seventh Circuit noted that it had to assume the prisoner's punishment for allegedly disobeying a guard's order "was indeed retaliation for filing a grievance about, and for publicizing, the noose incident." *Id.* at 446. Thus, the Seventh Circuit determined that the issue to be resolved was whether the filing or the publicizing was protected by the first amendment. *Id*. The Seventh Circuit, in reversing and remanding the dismissal of the prisoner's claim that his right to free speech had been infringed, "d[id] not agree with the district judge that the plaintiff's grievance was merely a 'personal gripe,' as if he had been complaining that the prison commissary had shortchanged him for some item that he had bought." *Id*. at 447.

¶ 32    Unlike *Dobbey*, where a prisoner filed a civil rights lawsuit against prison personnel seeking to " 'petition the Government for the redress of grievances,' " claiming he was retaliated against for exercising his speech under the first amendment (*id*. at 446),

14

here, First Financial's lawsuit involves a completely private dispute over an alleged credit card debt. Furthermore, in *Dobbey*, the Seventh Circuit determined that retaliation for "*uttering*" his grievance would be a *prima facie* infringement of the prisoner's freedom of speech. (Emphasis in original.) *Id.* at 447. Here, conversely, First Financial fails to make a persuasive argument that filing a lawsuit against a private citizen for an alleged credit card debt—to the extent it can be construed as protected speech—somehow involves the kind of acts of public participation in government protected and encouraged under the Participation Act. Rather, it is apparent from the record that First Financial did not act in furtherance of the constitutional rights to petition, speech, association, and participation in government, as provided under section 15 of the Participation Act, but acted in furtherance of a solely private matter. Accordingly, First Financial has failed to demonstrate that its acts were in furtherance of its constitutional rights as contemplated by the Participation Act.

¶ 33    Furthermore, even assuming for the sake of argument that First Financial's act of filing a collection lawsuit against a private individual is protected activity under the Participation Act (satisfying the first prong of the analysis), First Financial fails to meet its burden under the next step in the analysis. To satisfy the second prong of the analysis, First Financial must demonstrate that Theresa's amended counterclaim was filed for the sole purpose of interfering with its constitutional right to participate in government to obtain favorable government action (see *Jursich*, 2013 IL App (1st) 113279, ¶ 17), otherwise, Theresa's amended counterclaim does not trigger immunity under the Participation Act. First Financial contends that Theresa was not sued and, therefore, does

15

not have standing in the underlying case. For that lone reason, First Financial argues that Theresa's amended counterclaim is meritless. We find this argument unavailing.

¶ 34   The Illinois Supreme Court has reasoned that "where a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants, the lawsuit is not solely based on defendant's rights of petition, speech, association, or participation in government." *Sandholm*, 2012 IL 111443, ¶ 45. To determine whether a party filed a claim solely in response to activities protected by the Participation Act, we consider whether the claim is meritless and was filed in retaliation in order to deter the other party from further engaging in such activities. *Garrido*, 2013 IL App (1st) 120466, ¶ 18. In considering the propriety of the circuit court's ruling on a motion to dismiss, we must presume the legal sufficiency of the nonmovement's claim. *Ryan*, 2012 IL App (1st) 120005, ¶ 22. A claim is meritless if the moving party disproves some essential element of the nonmovant's claim. *Garrido*, 2013 IL App (1st) 120466, ¶ 19. Accordingly, First Financial must demonstrate that Theresa failed to allege sufficient facts to show that her amended counterclaim was genuine and not factually baseless. *Id.* ¶ 23; *Sandholm*, 2012 IL 111443, ¶ 45.

¶ 35   The Illinois Supreme Court has ruled that lack of standing is an affirmative defense. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494 (1988). Rather than proving that a claim is meritless, an affirmative defense merely allows a defendant to avoid the legal consequences of a real injury to the plaintiff. *Garrido*, 2013 IL App (1st) 120466, ¶ 27; see also *Glisson v. City of Marion*, 188 Ill. 2d 211, 222 (1999) (the supreme court refused to adopt additional requirements for standing to avoid

16

confusing the standing doctrine with the merits of the underlying suit). "[W]hen determining whether a particular claim is a SLAPP, [the] analysis must remain focused only on the validity of the plaintiff's claim [citation], not whether a defendant can escape liability for an otherwise meritorious claim by proving an affirmative defense." *Garrido*, 2013 IL App (1st) 120466, ¶ 27. "A successful affirmative defense cannot be presumed to render claims meritless within the meaning of the Act." *Id.*

¶ 36 Here, even assuming *arguendo* that Theresa lacked standing, her lack of standing does not reflect on the merits of the amended counterclaim. In addition, First Financial does not argue in its brief the actual merits of any of the specific claims raised in Theresa's amended counterclaim. As such, First Financial has failed to demonstrate that Theresa alleged insufficient facts to show that her amended counterclaim was genuine and not factually baseless. Therefore, First Financial has forfeited second-prong review under the Participation Act to demonstrate that Theresa's amended counterclaim is meritless. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Based on this finding, we need not consider whether First Financial has also shown that Theresa's amended counterclaim was retaliatory, nor whether Theresa has met her own burden to show that First Financial's actions were not genuinely aimed at solely procuring favorable government action under the third prong. See *Garrido*, 2013 IL App (1st) 120466, ¶ 30; see also *Jursich*, 2013 IL App (1st) 113279, ¶ 30.

¶ 37 Based on the foregoing, we cannot conclude that the Theresa's counterclaim was solely based on, related to, or in response to First Financial's acts in furtherance of its

rights to petition and speech. Thus, First Financial has failed to shift the burden to Theresa to show by clear and convincing evidence that First Financial's acts were not genuinely aimed at solely procuring favorable government action. We, therefore, hold that the circuit court did not err in finding that First Financial was not immune from liability under the Participation Act.

¶ 38   In sum, First Financial initially fails to demonstrate that its act of filing a collection lawsuit is the type of involvement in governmental activity contemplated by the Participation Act. Additionally, even if we assume that First Financial acted in furtherance of such activity, First Financial also fails to demonstrate that Theresa's amended counterclaim is solely based on that activity. Under these circumstances, we cannot find that Theresa's amended counterclaim is a SLAPP, for which First Financial is afforded immunity under the Participation Act.

¶ 39   Lastly, we emphasize that this interlocutory appeal is limited to the question of whether the Participation Act bars Theresa's counterclaim against First Financial. Nothing in this order should be perceived as an indication of this court's view about the actual merits of any of the claims contained in Theresa's amended counterclaim. We simply hold that Theresa's amended counterclaim does not constitute a SLAPP within the meaning of the Participation Act, thus, the circuit court was correct in not dismissing Theresa's counterclaim on that basis.

¶ 40                              III. Conclusion

¶ 41    Based on the foregoing, we find that First Financial is not immune from liability under section 15 of the Participation Act. Accordingly, we affirm the circuits court's judgment denying First Financial's motion to dismiss.


¶ 42    Affirmed.