# Illinois Official Reports

## Appellate Court

---

*Samoylovich v. Montesdeoca*, **2014 IL App (1st) 121545**

---

| | |
|---|---|
| Appellate Court Caption | BORIS SAMOYLOVICH, Plaintiff-Appellee, v. HENRY MONTESDEOCA, Defendant-Appellant (The City of Chicago, a Municipal Corporation; Gilbert Ortiz, John Sebeck, and Edward Wodnicki, Defendants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1545 |
| Filed | June 13, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly denied defendant's motion to dismiss plaintiff's action seeking damages for malicious prosecution and civil conspiracy on the ground that the action was barred by the Citizen Participation Act, commonly referred to as the SLAPP Act, since the action was filed after plaintiff was acquitted of a criminal charge of felony criminal damage to property in connection with an attempted burglary that defendant allegedly witnessed and testified about at plaintiff's criminal proceedings, and defendant failed to show that the action was a meritless action filed in retaliation for defendant's protected activities. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-5328; the Hon. Eileen M. Brewer, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Douglas F. McMeyer, Hartwell P. Morse III, Rachel C. Casey, and Fredric E. Roth V, all of Husch Blackwell, LLP, of Chicago, for appellant.

Jeffrey A. Garbutt, of Chepov & Scott, LLC, of Chicago, for appellee.

Panel

JUSTICE TAYLOR delivered the judgment of the court, with opinion.
Justices McBride and Palmer concurred in the judgment and opinion.

**OPINION**

¶ 1                                    I. INTRODUCTION

¶ 2        Appellant Henry Montesdeoca appeals from the circuit court's order denying his motion to dismiss brought under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2012)) in which he claimed immunity pursuant to the Citizen Participation Act (735 ILCS 110/1 *et seq.* (West 2012)) (the Act).

¶ 3        The appeal arises out of a civil lawsuit filed by appellee Boris Samoylovich against the City of Chicago, individual police officers, and Montesdeoca. Samoylovich filed the lawsuit to seek damages for malicious prosecution and civil conspiracy following his acquittal on the criminal charge of felony criminal damage to property in connection with an attempted burglary that Montesdeoca allegedly witnessed and to which Montesdeoca testified during the related criminal proceedings.

¶ 4        In response to Samoylovich's claims, Montesdeoca filed a section 2-619(a)(9) motion asserting immunity from liability under the Act. The circuit court denied the motion and Montesdeoca appealed to this court. Upon this court's initial denial of the appeal, Montesdeoca filed a petition for leave to appeal to the Illinois Supreme Court, which denied the petition but entered a supervisory order remanding the appeal to this court for resolution. *Samoylovich v. City of Chicago*, No. 114802 (Ill. Nov. 28, 2012) (supervisory order). For the reasons that follow, we find that the circuit court properly denied Montesdeoca's motion.

¶ 5                                    II. BACKGROUND

¶ 6        On the evening of January 6, 2008, Montesdeoca allegedly witnessed an attempted break-in of two of his neighbors' garages. Montesdeoca had been friends with one of these neighbors, Detective Gilbert Ortiz of the Chicago police department, and other members of his family for several years. During the commotion in connection with discovering the attempted break-in, Montesdeoca and Detective Ortiz allegedly witnessed Samoylovich enter a get-away vehicle and escape the scene. Montesdeoca obtained half of the license plate number of the fleeing vehicle, while Detective Ortiz obtained the entire number.

¶ 7        After running the license plate number in the Law Enforcement Agencies Data System (LEADS), the Chicago police obtained the name "Boris Samoylovich" and an address for the

- 2 -

vehicle's owner. The Chicago police then ran the name in the Illinois Citizen and Law Enforcement Analysis and Reporting database (ICLEAR), a system that stores data relating to criminal offenders in Illinois, and obtained Samoylovich's name, photograph, and address. However, the addresses produced by LEADS and ICLEAR were different, a fact raising the possibility that the two Boris Samoyloviches identified were not the same person, which in fact they were not. The registered owner of the vehicle, who was identified in LEADS but not in ICLEAR, turned out to be an unrelated, older, deceased man whose widow had sold the car to a neighbor on January 4, 2008. This neighbor had never seen nor did she know the Samoylovich who is the plaintiff in the instant case.

¶ 8    Nevertheless, without looking into the ambiguity created by the different address listings, the Chicago police arrested Samoylovich at the home address listed in ICLEAR. However, the Chicago police were unable to locate the get-away vehicle. Montesdeoca and Detective Ortiz then separately identified Samoylovich in a photo array and a lineup. No other evidence has been offered that connects Samoylovich to the incident other than Montesdeoca's and Detective Ortiz's eyewitness statements and identifications, and there is no evidence that the Chicago police knew of the existence of the two Boris Samoyloviches when they arrested him.

¶ 9    By the time of the grand jury proceedings, which occurred on January 22, 2008, the Chicago police had become aware of the existence of the two Boris Samoyloviches through Valere Samoylovich, the deceased man's son. At the grand jury, Detective John Sebeck, a detective who worked on the case and who is also a named defendant, testified that the Chicago police had believed that the older, deceased Boris Samoylovich was Samoylovich's father. This belief is not documented in any record produced by the Chicago police during the investigation nor was it confirmed by Valere Samoylovich. Later, at the criminal trial, Detective Sebeck claimed Samoylovich was the source of this information, though Samoylovich never confirmed making such an admission. The State's Attorney subpoenaed Montesdeoca, who testified against Samoylovich at his criminal trial, the result of which was an acquittal.

¶ 10    Following his acquittal, Samoylovich filed a second amended complaint on September 28, 2011 against the city of Chicago, the officers involved, and Montesdeoca alleging malicious prosecution and civil conspiracy. For both counts, Samoylovich sought compensatory damages in excess of $50,000 to compensate him for being "publicly disgraced," suffering "great anxiety and pain of body and mind," and incurring defense costs and losses associated with being "hindered and prevented from attending to affairs, employment and business."

¶ 11    On October 19, 2011, Montesdeoca filed a section 2-619(a)(9) motion to dismiss invoking the protections of the Act, which provides immunity for a defendant who has been victimized by a strategic lawsuit against public participation in government or the proper exercising of the defendant's first amendment rights (a SLAPP). On December 14, 2011, the circuit court entered an order ruling that the Act was applicable to the case and permitting limited discovery to commence pursuant to the Act. However, on January 20, 2012, the Illinois Supreme Court issued its opinion in *Sandholm v. Kuecker*, 2012 IL 111443, a landmark case refining the proper analytical framework under the Act, and the circuit court immediately directed the parties to submit additional briefs to assess the impact of the decision on the facts of the present case.

¶ 12    On May 2, 2012, after considering the briefing and evidentiary submissions, the circuit court reversed its initial decision and held that the Act did not apply to the present case. To support its ruling, the circuit court provided the following reasoning:

> "[T]his is clearly not a SLAPP suit, and I am denying Defendant's motion to dismiss. Illinois law requires that the case be meritless and be brought solely for the purpose of retaliating against the Defendant for his activities in participating in government. This clearly isn't the case in this case. *** I would be doing a great disservice to the state of the law to actually grant this motion, and it would be clearly wrong. This wasn't a hard one. This was actually pretty darn easy."

¶ 13    Following the circuit court's ruling, Montesdeoca filed a petition for leave to appeal to this court, which we denied on July 17, 2012. On November 28, 2012, Montesdeoca then filed a petition for leave to appeal to the Illinois Supreme Court, which denied the petition but entered a supervisory order directing this court to vacate its order and "to allow the appeal with particularized consideration as to each defendant."

¶ 14                                    III. ANALYSIS

¶ 15    On appeal, Montesdeoca contends that the circuit court contravened the Act and the concomitant Illinois case law when it denied his motion to dismiss Samoylovich's complaint. Specifically, he argues that reading in the requirements that a SLAPP, as contemplated by the Act, be meritless and brought for the sole purpose of retaliation fails to comport with the plain text of the statute, which lacks this precise phrasing. Montesdeoca supplements this argument by claiming that reading in these requirements both renders the Act superfluous and imposes burdens on a defendant that defeat the purpose of the Act. In addition to attacking the circuit court's ruling on statutory textual grounds, he also claims that the circuit court's ruling is contrary to the body of Illinois case law that construes the Act. Finally, and in the alternative, Montesdeoca argues that the circuit court failed to consider the case individually against him according to the instructions contained in the Illinois Supreme Court's supervisory order.

¶ 16    Samoylovich responds that the circuit court's ruling is entirely consistent with the plain meaning of the statute and that the court properly followed the analytic framework delineated by the Act and accompanying Illinois case law. In support of his response, Samoylovich counters that Illinois law does require a SLAPP to be meritless and brought solely for the purpose of retaliation if it is dismissed under the Act. Samoylovich also argues that the circuit court's ruling does not render the Act superfluous nor does it place any undue limitations on Montesdeoca.

¶ 17                                A. Standard of Review

¶ 18    Because the circuit court based its denial of Montesdeoca's motion on its interpretation and application of the Act, a question of law exists and a *de novo* standard of review applies. *Hammons v. Society of Permanent Cosmetic Professionals*, 2012 IL App (1st) 102644, ¶ 13 (citing *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 634 (2010)).

¶ 19                 B. The Circuit Court's Ruling Does Not Contravene the Act

¶ 20       The standards of statutory interpretation are firmly entrenched in Illinois. When construing a statute, the paramount rule of statutory interpretation directs courts "to ascertain and give effect to the intent of the legislature, the language of the statute being the best indicator of such intent." *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 37. Statutory language must not be viewed in isolation, but rather it must be considered holistically in light of the entire statute (*Sandholm*, 2012 IL 111443, ¶ 41) and in conjunction with other statutes addressing the same or similar subjects. *MQ Construction Co. v. Intercargo Insurance Co.*, 318 Ill. App. 3d 673, 681 (2000) (citing *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168-69 (1995)). Furthermore, Illinois courts should read statutes in a manner such that "no term is rendered 'meaningless or superfluous.' " *NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147, ¶ 10 (quoting *Carter*, 2012 IL 113204, ¶ 37). In addition, absent any textual ambiguities in a statute, courts should "not depart from that language by reading into the statute exceptions, limitations, or conditions that conflict with the legislature's expressed intent." *800 South Wells Commercial, LLC v. Horwood Marcus & Berk Chartered*, 2013 IL App (1st) 123660, ¶ 12 (citing *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565-66 (2009)).

¶ 21       However, "[l]egislative intent may be ascertained not only by examining the statutory language, but [also] by considering the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained." *Carter*, 2012 IL 113204, ¶ 37. Moreover, courts should not permit "formality to trump substance where the result would be contrary to the purposes for which the statute was enacted and lead to consequences which the legislature could not have intended." *Township of Jubilee v. State of Illinois*, 2011 IL 111447, ¶ 35. To that end, " '[c]ourts must avoid reading statutory language either too literally or too broadly' " when striving to effectuate legislative intent. *Grever v. Board of Trustees of the Illinois Municipal Retirement Fund*, 353 Ill. App. 3d 263, 266 (2004) (quoting *Village of Lake Villa v. Bransley*, 348 Ill. App. 3d 280, 284 (2004)). Finally, "[t]hat which is implied in a statute is as much a part of it as that which is expressed." *Grever*, 353 Ill. App. 3d at 267 (citing *Baker v. Miller*, 159 Ill. 2d 249, 260 (1994)). These implications may include judicially created tests that are read into statutory text or conclusions gleaned from them. See *Health Professionals, Ltd. v. Johnson*, 339 Ill. App. 3d 1021, 1038 (2003) (noting that the judicially created "rule of reason" test should be applied under the Illinois Antitrust Act to determine whether the statutory standard, "unreasonably restrain trade or commerce," has been violated despite no statutory mention of that test (internal quotation marks omitted)).

¶ 22       Section 5 of the Act describes the public policy objectives that motivated the legislature to pass the Act. In this section, the legislature expressed alarm at the "disturbing increase in lawsuits termed 'Strategic Lawsuits Against Public Participation' in government or 'SLAPPs' as they are popularly called" and framed the Act as the legislative response to curb the deleterious effects of SLAPP abuses. 735 ILCS 110/5 (West 2012). To determine whether a lawsuit qualifies as a SLAPP, thus activating the Act's protective mechanisms, the legislature articulated a test, the first part of which is contained in section 15 of the Act:

      "This Act applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech,

association, or to otherwise participate in government." 735 ILCS 110/15 (West 2012).

Illinois courts have construed this passage as the first prong of a structured analytical framework, with the burden borne by the movant defendant. See, *e.g.*, *Sandholm*, 2012 IL 111443, ¶ 56 (discussed below).

¶ 23        Montesdeoca argues that the circuit court ignored the text of the Act when it denied his motion on the basis that "Illinois law requires that the case be meritless and be brought solely for the purpose of retaliating against the Defendant for his activities in participating in government." He claims that because the phrase "meritless" or "brought solely for the purpose of retaliating" does not explicitly appear in the text of the Act, the court erred when it denied him the protections afforded under the Act using these phrases to explain its reasoning.

¶ 24        This court disagrees with Montesdeoca because he ignores the implicit subtext upon which the Act stands and which informs the Act's understanding of what it means for a lawsuit to be a SLAPP. Rather than constructing a new definition of SLAPPs, the Act builds upon the existing, widely accepted, common law understanding. See 735 ILCS 110/5 (West 2012) (identifying SLAPPs for the purposes of the Act as " 'Strategic Lawsuits Against Public Participation' in government or 'SLAPPs' *as they are popularly called*" (emphasis added)). In *Sandholm*, the Illinois Supreme Court unambiguously acknowledged the Act's reliance upon this common law understanding of SLAPPs. See *Sandholm*, 2012 IL 111443, ¶ 42 ("Looking at the statute in its entirety, it is clear that the legislation is aimed at discouraging and eliminating meritless, retaliatory SLAPPs, *as they traditionally have been defined.*" (Emphasis added.)). Naturally, this interpretation, that the Act contemplates SLAPPs in their traditional, common law sense, has reverberated throughout the Illinois appellate districts. See, *e.g.*, *Capeheart v. Terrell*, 2013 IL App (1st) 122517, ¶ 12 ("Thus, as *Sandholm* explains, the Act only applies to meritless, retaliatory SLAPP lawsuits, *as those suits have traditionally been defined.*" (Emphasis added.)); *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶¶ 13-14 (recognizing that the legislature passed the Act to neutralize the pernicious effects of "[t]he traditional SLAPP paradigm" on defendants who have properly exercised their first amendment rights or their right to petition or participate in government).

¶ 25        The question then remains: what is the traditional, common law definition of a SLAPP? Montesdeoca claims that multiple definitions abound and vary widely, thus negating the absence of merit and the lack of a retaliatory nature as essential features. However, a close inspection of the sources comprising the foundation of Illinois jurisprudence on the subject reveals that, while descriptions of the characteristics and effects of SLAPPs may vary somewhat, sources overwhelmingly define SLAPPS as meritless and retaliatory. See, *e.g.*, *id.* ¶ 21 (explaining that for the purposes of the Act, a SLAPP claim is one that is "meritless and was filed in retaliation against the movant's protected activities in order to deter the movant from further engaging in those activities" (citing *Sandholm*, 2012 IL 111443, ¶ 57)); *Capeheart*, 2013 IL App (1st) 122517, ¶ 12; *Duracraft Corp. v. Holmes Products Corp.*, 691 N.E.2d 935, 941 (Mass. 1998) (" 'SLAPPs are by definition meritless suits.' " (quoting John C. Barker, *Common Law and Statutory Solutions to the Problems of SLAPPs*, 26 Loy. L.A. L. Rev. 395, 396 (1993))); Penelope Canan & George W. Pring, *Strategic Lawsuits Against Public Participation*, 35 Soc. Probs. 506, 506-07 (1988) ("[i]t is this political retaliation,

through the law, that distinguishes SLAPPs from" other types of lawsuits). Even cases that do not expressly define SLAPPs in their analyses rely on these terms to define the central objective of the Act. See *Wright*, 238 Ill. 2d at 633 ("[t]he purpose of the Act is to give relief, including monetary relief, to citizens who have been victimized by meritless, retaliatory SLAPP lawsuits").

¶ 26   With an understanding that the Act relies on this common law definition of SLAPPs, *Sandholm* formulated a test from sections 15 and 20 of the Act that determines whether a given lawsuit is a meritless and retaliatory, and thus a SLAPP for the purposes of the Act. *Sandholm* reformulated the movant's burden under the test in the following terms:

> "In light of the clear legislative intent expressed in the statute to subject only meritless, retaliatory SLAPP suits to dismissal, we construe the phrase 'based on, relates to, or is in response to' in section 15 to mean *solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.' " (Emphasis in original.) *Sandholm*, 2012 IL 111443, ¶ 45 (quoting 735 ILCS 110/15 (West 2008)).

Requiring the movant to demonstrate that plaintiff's lawsuit was solely " 'based on, relate[d] to, or *** in response to' [their protected acts] *** allows a court to identify meritless SLAPP suits subject to the Act" (*id.* ¶ 48) to achieve the statutory goal of "discouraging and eliminating meritless, retaliatory SLAPPs, as they have traditionally been defined" (*id.* ¶ 42).

¶ 27   Courts in this jurisdiction have applied the *Sandholm* standard to hold that where a defendant fails to show that a plaintiff's suit is meritless and retaliatory, the defendant is not entitled to have the suit dismissed under the Act. For example, in *Ryan*, the court held that the method for proving that plaintiff's lawsuit was a SLAPP under the Act was to establish that it was meritless and retaliatory through the *Sandholm* test. *Ryan*, 2012 IL App (1st) 120005, ¶ 21 ("To satisfy its burden under this prong of the test, a movant must affirmatively demonstrate that the nonmovant's claim is a SLAPP within the meaning of the Act, that is, that the claim is meritless and was filed in retaliation against the movant's protected activities ***." (citing *Sandholm*, 2012 IL 111443, ¶ 57)). The *Ryan* plaintiff, a circuit court judge, brought a defamation suit against Fox Television Stations for airing an investigative report stating that plaintiff left work early and went home on a number of days. *Ryan*, 2012 IL App (1st) 120005, ¶¶ 1, 5. In reviewing defendants' motion to dismiss under the Act, the court found that plaintiff's claim was not meritless, insofar as defendants could not show that the report was substantially true. *Id.* ¶¶ 26-29. Thus, defendants did not carry their burden under the Act and the trial court was right to deny their motion to dismiss. *Id.* ¶ 30.

¶ 28   Similarly, in *Capeheart*, 2013 IL App (1st) 122517, the court also affirmed the denial of defendant's motion to dismiss under the Act where defendant failed to show that the lawsuit at issue was meritless and retaliatory. In *Capeheart*, plaintiff brought a defamation suit against defendant for falsely alleging that a student had filed a stalking complaint against her. *Id.* ¶¶ 3-4. The trial court dismissed plaintiff's claims against defendant under the Act, but the *Capeheart* court reversed the dismissal, explaining that "as *Sandholm* explains, the Act only applies to meritless, retaliatory SLAPP lawsuits, as those suits have traditionally been defined." *Id.* ¶ 12 (citing *Sandholm*, 2012 IL 111443, ¶¶ 51-53). The court further stated, "Under these facts, we cannot necessarily infer that the plaintiff's suit was meritless, retaliatory, or intended to prevent [defendant] from exercising his constitutional rights.

Accordingly, we find that [defendant] did not meet his burden of establishing that the plaintiff's suit constituted a SLAPP suit." *Id*. ¶ 17.

¶ 29 The position articulated in *Sandholm* and applied in *Ryan* and in *Capeheart* is now firmly established in Illinois law. See, *e.g.*, *Chicago Regional Council of Carpenters v. Jursich*, 2013 IL App (1st) 113279, ¶ 20 (holding that in order to meet its burden under the *Sandholm* test, "the defendants were required to demonstrate affirmatively that [the plaintiff's] suit was retaliatory and meritless" (citing *Ryan*, 2012 IL App (1st) 120005, ¶ 21)); *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 18 (same) (citing *Ryan*, 2012 IL App (1st) 120005, ¶ 21).

¶ 30 In the present case, the circuit court's reasoning was in harmony with the well-established interpretation of the Act: that, under *Sandholm*, dismissal is not proper where defendant cannot show that a claim is a meritless, retaliatory SLAPP as contemplated by the Act. See *Ryan*, 2012 IL App (1st) 120005, ¶ 21 (citing *Sandholm*, 2012 IL 111443, ¶¶ 33-34, 57). While the circuit court did not explicitly reference the precise language of the Act, Montesdeoca has not presented any evidence establishing that the circuit court failed to consider the statutory text as interpreted by Illinois case law when it concluded that Samoylovich's claims were neither meritless nor retaliatory within the meaning of the Act. Rather than placing a new burden on Montesdeoca or frustrating the purpose of the Act, as Montesdeoca also claims, the circuit court's statement that Samoylovich's claims were neither meritless nor retaliatory constituted a legal conclusion that Montesdeoca failed to meet his burden under the Act. Accordingly, the circuit court's ruling is not contrary to the plain meaning of the Act.

¶ 31 ### C. The Circuit Court's Interpretation
### Does Not Render the Entire Act Superfluous

¶ 32 In support of his argument that the circuit court's ruling violates the plain meaning of the Act's text, Montesdeoca also asserts that by requiring him to demonstrate that Samoylovich's claims are meritless and retaliatory, the circuit court negates the Act's legal significance because there are other procedural mechanisms aimed at terminating such claims. We disagree.

¶ 33 Affirming the circuit court's ruling does not render the Act duplicative of other dispositive mechanisms such as summary judgment, motions to dismiss, and motions under Illinois Supreme Court Rule 137. See 735 ILCS 5/2-615, 2-619, 2-619.1, 2-1005 (West 2012); Ill. S. Ct. R. 137 (eff. July 1, 2013). Unlike these procedural devices, the Act exists for the very narrow purpose of "bar[ring] only those lawsuits that try to abuse the justice system by bringing unfounded claims in retaliation against defendants who legitimately exercise their first amendment rights [or their rights to participate in government], while simultaneously preserving the right of individuals to file lawsuits for real injuries." *Garrido*, 2013 IL App (1st) 120466, ¶ 20 (citing 735 ILCS 110/5 (West 2010)). To achieve this end, the Act provides an expedited procedure for reviewing a defendant's motion. 735 ILCS 110/20(a) (West 2012) (hearings and decisions on motions must occur within ninety days). In addition, while a court considers a motion brought under the Act, discovery is suspended with the narrow exception, granted only with leave of court, of discovery on the issue of a defendant's potential immunity. 735 ILCS 110/20(b) (West 2012). Furthermore, parties are entitled to expedited appeals from orders denying the motion or from a circuit court's failure to decide the motion within the allotted ninety days. 735 ILCS 110/20(a) (West 2012).

Finally, upon dismissal, a defendant may collect attorney fees for expenses in connection with the motion. 735 ILCS 110/25 (West 2012). Illinois courts have distinguished the Act from other procedural mechanisms upon these technical characteristics alone and without even referencing the unique analytical framework articulated by *Sandholm* and its progeny. See *Hammons*, 2012 IL App (1st) 102644, ¶ 21 (describing the procedural mechanics and focus of the Act to distinguish it from other dispositive procedural devices). Thus, even under the standard articulated in *Sandholm* and its progeny and applied by the trial court, motions to dismiss under the Act remain distinct from the other dispositive mechanisms listed by Montesdeoca.

¶ 34                      D. The Circuit Court's Ruling
                  Is Consistent With Illinois SLAPP Case Law

¶ 35    In addition to his statutory argument, Montesdeoca claims that the circuit court's ruling is inconsistent with the analytic framework articulated in *Sandholm* and applied by other courts when deciding motions to dismiss under the Act. Further, he asserts that those cases where the court seemed to emphasize meritless and retaliatory language were wrongly decided, and that the same judicial outcome would have resulted without those courts' reliance on those terms. We disagree with Montesdeoca's characterization of *Sandholm* and the resulting case law and find that the circuit court's ruling is consistent with this case law, which has been correctly decided.

¶ 36    In *Sandholm*, the Illinois Supreme Court was asked to determine whether the Act barred a lawsuit to recover for intentional torts based on allegedly defamatory statements made by defendants about a high school basketball coach that were published in a local newspaper. *Sandholm*, 2012 IL 111443, ¶¶ 1, 18-19. In reversing the dismissal of the plaintiff's complaint by the lower courts, the supreme court outlined the proper analytic framework for determining whether the Act bars a given claim. First, a defendant must satisfy an "initial burden of proving that plaintiff's lawsuit was solely 'based on, relate[d] to, or in response to' their acts in furtherance of their rights of petition, speech or association, or to participate in government." *Id.* ¶ 56 (quoting 735 ILCS 110/15 (West 2008)). After a defendant satisfies this prong of the test, the burden shifts to the plaintiff "to provide clear and convincing evidence that [the] defendants' acts are not immunized from liability under the Act." *Sandholm*, 2012 IL 111443, ¶ 56; see 735 ILCS 110/20(c) (West 2012).[1]

_____

[1]While *Sandholm* bifurcated the test into these two prongs, some subsequent courts have trifurcated the analysis into the following prongs: (1) defendant must prove that its acts were in furtherance of their right to petition, speak or associate, or otherwise participate in government to obtain favorable government action; (2) defendant must prove that plaintiff's claims are solely based on, related to, or in response to the defendant's acts; and (3) plaintiff must produce clear and convincing evidence that the defendant's were not genuinely aimed at solely procuring favorable government action. *E.g.*, *Hammons*, 2012 IL App (1st) 102644, ¶ 18 (citing *Sandholm*, 2012 IL 111443, ¶¶ 53-57). The reason for this organizational difference is that, prior to *Sandholm*, courts required the movant to meet the diminished burden of demonstrating "only that it had engaged in protected activity," a burden which corresponds to the first of the three modern prongs. *Ryan*, 2012 IL App (1st) 120005, ¶ 21 n.2 (citing *Wright*, 238 Ill. 2d at 635-36). *Sandholm* added the additional requirement demanding that a defendant also show that plaintiff's claims are " 'solely based on, related to, or in response to the defendant['s]' " furtherance of its protected acts. *Ryan*, 2012 IL App (1st) 120005, ¶ 18 (quoting *Hammons*, 2012 IL

¶ 37    The court also noted that the Act was not intended to protect those who commit tortious acts while engaging in a protected activity. *Sandholm*, 2012 IL 111443, ¶ 45. In those instances, the plaintiff's lawsuit is not solely based on the defendant's proper exercising of its rights, but rather the lawsuit constitutes a legitimate attempt to seek redress for an injury. *Id.* The *Sandholm* court reversed the dismissal of plaintiff's defamation claim when defendants failed to meet their burden under the test because they could not show that plaintiff's defamation claim was based solely on the defendants' non-tortious petitioning activities. *Id.* ¶ 57. As a result, the court concluded that the Act did not apply because the lawsuit was not a meritless, retaliatory SLAPP; instead, the plaintiff's goal in the lawsuit was simply to obtain relief for the personal damages he allegedly suffered. *Id.*

¶ 38    In the present case, the circuit court properly followed the analytic framework articulated in *Sandholm*. Although it initially determined that the Act was applicable to Samoylovich's lawsuit, the circuit court recognized that the refinements promulgated by *Sandholm* had the potential to alter its conclusion. After it requested additional briefing from the parties as to the effects of *Sandholm* on Samoylovich's claims, the circuit court reversed its decision and held that the Act did not apply to bar the claims. In support of the reversal, the circuit court acknowledged the addition to the defendant's burden under *Sandholm*: a defendant must establish that the claims are "*solely* based on, relating to, or in response to" a defendant's protected activities. (Emphasis in original.) *Id.* ¶ 45. Noting the effects of Samoylovich's allegations that Montesdeoca lied during the investigation and criminal trial, the circuit court reviewed the evidentiary submissions and determined Montesdeoca had not met this additional burden. This ruling was in harmony with the *Sandholm* analytic framework. See *id.* (holding that a plaintiff's claims are not solely based on, related to, or in response to defendants' otherwise protected activities when "plaintiff files suit genuinely seeking relief for damages" arising from the "tortious acts of defendants" committed while engaged in those activities); see also, *e.g.*, *Capeheart*, 2013 IL App (1st) 122517, ¶ 16 (same) (citing *Sandholm*, 2012 IL 111443, ¶ 57). Accordingly, the circuit court's conclusion that Samoylovich's lawsuit was not meritless or brought solely for the purpose of retaliation comports with *Sandholm*.

¶ 39    Montesdeoca mischaracterizes other cases he cites as wrongly decided or as support for the assertion that being meritless or retaliatory are not requirements under the Act. As already established, a lawsuit is not meritless or retaliatory for the purposes of the Act when a defendant fails to meet its burden under the *Sandholm* framework. See *Sandholm*, 2012 IL 111443, ¶¶ 56-57; *Hammons*, 2012 IL App (1st) 102644, ¶ 18 (explaining that when defendants fail to demonstrate that plaintiffs' claims are "solely based on, related to, or in response to the defendants' 'acts,' " the burden does not shift because such lawsuits are not "meritless, retaliatory SLAPP lawsuits, as those suits have traditionally been defined" (citing *Sandholm*, 2012 IL 111443, ¶¶ 42, 44-45, 47, 51, 53)).

¶ 40    Likewise, the circuit court's ruling does not conflict with the outcomes of other SLAPP cases. For instance, in *Wright*, which was decided before *Sandholm*, our supreme court found that a defendant met his burden under the then-complete analytic framework when the gravamen of the plaintiff's defamation claim centered around allegedly defamatory

_____

App (1st) 102644, ¶ 18). Nevertheless, the two contemporary formulations are substantive equivalents as the distribution of burdens of proof is identical between them.

- 10 -

statements made to the press in an alderman's office. *Wright*, 238 Ill. 2d at 635-36. The court reasoned that the statements were in furtherance of the defendant's right to speech, association, and petition or otherwise participate in government because the Act's protections extend to political expression directed at the electorate in addition to public officials. *Id.* at 636. Unlike the present case, the outcome in *Wright* turned on the plaintiff's burden. The court determined that the plaintiff did not meet its burden because it failed to rebut the defendant's testimony that proved that the allegedly defamatory statements were true. *Id.* at 637-38. As a result, by dismissing the lawsuit under the Act, the *Wright* court implicitly concluded that plaintiff's suit was a meritless, retaliatory SLAPP. See *id.* at 633 ("[t]he purpose of the Act is to give relief, including monetary relief, to citizens who have been victimized by meritless, retaliatory SLAPP lawsuits"). Furthermore, cases like *Ryan* and *Hammons* also demonstrate that being meritless and retaliatory are prerequisites for a lawsuit to be considered a SLAPP and thus dismissible under the Act. See *Ryan*, 2012 IL App (1st) 120005, ¶¶ 20-21 (articulating the *Sandholm* test and equating the satisfaction of this test with "affirmatively demonstrat[ing] that the nonmovant's claim is a SLAPP within the meaning of the Act, that is, that the claim is meritless and was filed in retaliation against the movant's protected activities"); *Hammons*, 2012 IL App (1st) 102644, ¶ 18 (describing the *Sandholm* test as having the effect that, "[i]n other words, the Act only applies to meritless, retaliatory SLAPP lawsuits, as those suits have traditionally been defined").

¶ 41                    E. The Circuit Court's Ruling Comports
                   With the Supreme Court's Supervisory Order

¶ 42        In the alternative to the above, Montesdeoca argues that the circuit court erred by not making particularized findings with respect to the merits of Samoylovich's claims as they relate to Montesdeoca individually. In sole support of this argument, Montesdeoca references the Act's ability to dispose of all or particular claims against all or particular defendants. However, Montesdeoca fatally overlooks the differing standards governing motions to dismiss under sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2012)).

¶ 43        At the outset, it is important to note that nothing in the supreme court's supervisory order requires an analysis other than what is habitually required under the Act. The order merely directs this court "to allow the appeal with particularized consideration as to each defendant." By analyzing Montesdeoca's motion under the Act, this court is giving "particularized consideration" to his attempt to employ the Act's protections to dismiss the claims Samoylovich brought against him.

¶ 44        A defendant must bring a motion to dismiss under the Act through section 2-619(a)(9). *Garrido*, 2013 IL App (1st) 120466, ¶ 21 (citing *Sandholm*, 2012 IL 111443, ¶ 54). While the key question when deciding a section 2-615 motion to dismiss is "whether the plaintiff has alleged sufficient facts which, if proved, would entitle the plaintiff to relief," the standard for deciding a 2-619(a) motion is different. *Doe v. Chicago Board of Education*, 339 Ill. App. 3d 848, 853 (2003), *aff'd*, 213 Ill. 2d 19 (2004) (citing *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991)). Instead of attacking the plaintiff's complaint or *prima facie* case, "[a] motion to dismiss under section 2-619(a) admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim." *Sandholm*, 2012 IL 111443, ¶ 55. Courts should construe the pleadings and supporting

- 11 -

documents in the light most favorable to the nonmovant, accept all well-pleaded facts in plaintiff's complaint, and draw all reasonable inferences in the plaintiff's favor. *Id.* Therefore, "a claim that may be legally insufficient under section 2-615 cannot be considered 'meritless' for the purpose of the Act because a motion under section 2-619(a)(9) necessarily concedes the legal sufficiency of that same claim." *Garrido*, 2013 IL App (1st) 120466, ¶ 21 (citing *Sandholm*, 2012 IL 111443, ¶ 55). However, if, under the second prong of the *Sandholm* analysis, a movant affirmatively "disproves some essential element of the nonmovant's claim," the claim is meritless for the purposes of the Act "because this shows the claim is factually baseless." *Garrido*, 2013 IL App (1st) 120466, ¶¶ 19, 23 (citing *Wright*, 238 Ill. 2d at 638).

¶ 45    Montesdeoca essentially argues that Samoylovich has not alleged sufficient facts to support his claims for malicious prosecution and civil conspiracy. However, these are the precise types of arguments that Montesdeoca has ceded by bringing a section 2-619(a)(9) motion to dismiss. See *Garrido*, 2013 IL App (1st) 120466, ¶¶ 20, 22 (holding that a movant under the Act could not challenge the adequacy of plaintiff's allegations for damages or whether allegedly defamatory statements fell under a recognized category of defamation *per se* when the standard under section 2-619(a)(9) required the movant to concede the legal sufficiency of the complaint). Even if his attacks raise issues for a trier of fact to resolve, Montesdeoca cannot prevail in this motion because he has only undermined the factual support for Samoylovich's claims without affirmatively disproving any essential element. See *Wright*, 238 Ill. 2d at 638 (defamation claim was meritless because movant demonstrated that the allegedly defamatory statement was indisputably true); *Garrido*, 2013 IL App (1st) 120466, ¶ 24 (concluding that plaintiff's claim was not meritless under the Act because defendant was unable to affirmatively disprove any essential element of plaintiff's defamation claim).

¶ 46    As a final argument, Montesdeoca points to what he asserts is Samoylovich's unsubstantiated, excessive damages request as proof that Samoylovich's lawsuit against him is a retaliatory SLAPP. It is true that some courts have recognized that extraordinarily high damages coupled with a complete lack of any supporting substantiation may indicate that a claim is brought for retaliatory purposes and thus constitutes a SLAPP. See, *e.g.*, *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 126 (2010). However, these cases have consistently required an extraordinarily high amount of damages claimed, in the millions, which is an amount far greater than that claimed by Samoylovich. For instance, in *Butler*, this court dismissed plaintiff's lawsuit under the Act in part because it determined that plaintiff's unsubstantiated damages totaling $4 million were intended "to strike fear into the defendant rather than being a good-faith estimate of the extent of the injury sustained." *Id.* However, the requested damages that the *Hytel* court found odious were 8,000% higher than the minimum request for compensatory damages at issue in the present case. Accordingly, the damages in this case do not rise to the extraordinary high level of damages courts have recognized as indicating that a given lawsuit is a retaliatory SLAPP. See *id.* ("a complaint seeking compensatory damages in the millions is one hallmark of a SLAPP" (citing Mark J. Sobczak, *SLAPPed in Illinois: The Scope and Applicability of the Illinois Citizen Participation Act*, 28 N. Ill. U. L. Rev. 559, 563 (2008))); see also *Jursich*, 2013 IL App (1st) 113279, ¶ 29 (denying movant's motion to dismiss under the Act when, "rather than millions in damages, [claimant] *** sought an unspecified amount in compensatory damages and exemplary

- 12 -

damages").

¶ 47                                    IV. CONCLUSION

¶ 48         Montesdeoca failed to meet his burden or demonstrate that Samoylovich's lawsuit against him for malicious prosecution and civil conspiracy is a meritless, retaliatory SLAPP within the meaning of the Act. The judgment of the circuit court of Cook County is affirmed.

¶ 49         Affirmed.