2020 IL App (2d) 190817-U
No. 2-19-0817
Order filed July 15, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ORVILLE BRETTMAN and ERCEL SCHUSTER, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 19-LA-39 |
| BREAKER PRESS CO., INC., MICHAEL NOONAN, SEAN TENNER, JACK D. FRANKS, ROOSEVELT GROUP, INC., KNI, INC., and ILLINOIS INTEGRITY FUND and its Directors, Officers, Agents, and John/Jane Does a/k/a Illinois Integrity Fund, | ) ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | Honorable Kevin T. Busch, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices McLaren and Bridges concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court properly dismissed the plaintiffs' complaint as an improper attempt to silence the defendants' rights to political speech.

¶ 2   The plaintiffs, Orville Brettman and Ercel Schuster, filed a libel action against the defendants Breaker Press, Michael Noonan, Sean Tenner, Jack D. Franks, Roosevelt Group, Inc.,

KNI, Inc, and the Illinois Integrity Fund,[1] regarding political flyers that were published in the spring of 2018 urging McHenry County citizens to vote against them. The circuit court of McHenry County dismissed the plaintiff's complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)), finding that it was an improper attempt to silence the defendants' rights to political speech. The plaintiffs appeal from that order. We affirm.

¶ 3                                I. BACKGROUND

¶ 4      In the spring of 2018, both Brettman and Schuster were running for positions on the McHenry County Board. Political flyers were published in McHenry County urging citizens to vote against Brettman and Schuster in the Republican primary election for positions on the County Board. The political flyers, in pertinent part, contained the following statements: (1) Brettman had "a history of criminality and hate dating back more than 40 years"; (2) Carpentersville president Brettman "planned illegal spying, burglaries;" (3) "Brettman told a grand jury in 1975 that he took part in admittedly illegal activities;" (4) Brettman was associated with the "Legion of Justice," a "right-wing terrorist group *** engaged in acts of physical attack, intimidation, robbery and death threats against individuals and organizations in the Northern Illinois area;" (5) Brettman was "tied to right-wing extremist group that bombed Elgin church"; (6) "Death threat against

---

[1] Breaker Press, Michael Noonan, and Roosevelt Group, Inc., have not filed an appellee brief. On appeal, Jack Franks and Illinois Integrity Fund are represented by the same attorney. However, their attorney, Natalie A. Harris, indicates that she has only filed a brief on behalf of Illinois Integrity Fund.

county official traced to home of *** Schuster"; (7) Brettman was charged with "criminal indictments;" and (8) Brettman made racist attacks.

¶ 5     On February 19, 2019, the plaintiffs filed a two-count complaint against the defendants alleging libel *per se* based on the statements contained in the political flyers.   On April 22, 2019, the plaintiffs filed an amended complaint alleging two additional counts of false light based on the statements contained in the political flyers.   The additional counts asserted that the defendants had portrayed them in a negative light as part of a malicious scheme to discredit, humiliate, and embarrass them.

¶ 6     On May 21, 2019, Illinois Integrity Fund and Franks filed a motion to dismiss the plaintiffs' complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)) based on immunity conferred by the Citizen Participation Act (Act) (735 ILCS 110/1, *et seq*. (West 2018)).   They asserted that the plaintiffs' complaint was a "SLAPP" (Strategic Lawsuit Against Public Participation) designed to silence their political speech protected by the First Amendment. They argued that the plaintiffs' claims were meritless because Brettman's grand jury testimony transcript from a 1975 hearing and a 2017 Lakewood police report regarding a death threat that came from Schuster's home demonstrated that the complained-of statements in the flyers were true.   They further pointed out that the plaintiffs admitted that the flyer statements reflected "snippets" and "headlines" previously published in the news media.   They also asserted that the statements did not qualify as defamation *per se*.   In support of their motion, Illinois Integrity Fund and Franks included: (1) the transcript of Brettman's testimony from the 1975 grand jury hearing; (2) newspaper articles that referred to Brettman's 1975 grand jury testimony; (3) a 2017 McHenry County blog post that contained a veiled threat; and (4) a Lakewood police report that indicated

that Jack Franks believed that the veiled threat was directed towards him and also that the blog post had been traced to Schuster's residence.

¶ 7    On June 4, 2019, Tenner and KNI filed a motion to join Illinois Integrity Fund's and Franks' motion to dismiss.

¶ 8    On July 10, 2019, the plaintiffs filed their response to the motion to dismiss.

¶ 9    On August 19, 2019, Illinois Integrity Fund and Franks filed their reply in support of their motion to dismiss.    Their reply was supported with the affidavits of Nicholas Lavarone and Sheldon Waxman.    Lavarone testified that he was the lead prosecutor in the 1975 grand jury proceedings and that the transcript was a fair and accurate copy of Brettman's grand jury testimony.    Waxman testified that he had received from the Cook County State's Attorney the 1975 grand jury transcripts, which included Brettman's testimony, during his representation of former Legion of Justice member, Thomas Stewart.

¶ 10    On August 20, 2019, the plaintiffs filed a sur-response to Illinois Integrity Fund's and Franks' reply.    The sur-response was supported by the counter-affidavits of both Brettman and Schuster.    In his affidavit, Brettman asserted that (1) he was not a member of the Legion of Justice and (2) the transcript at issue was incomplete.    In her counter-affidavit, Schuster denied making a death threat but acknowledged that the Lakewood police department had asked her to submit to an interview concerning a threat.

¶ 11    On August 21, 2019, following a hearing, the trial court dismissed the plaintiffs' complaint. The trial court found that the political flyers were "campaign materials" that were protected under the Act.    The trial court further found:

"[Brettman and Schuster] know and knew that the allegations leveled against them [in the political flyers] were not defamatory.    They knew they were all based on true events in

their lives, and yet they still brought this action seeking to punish and deter. For all of those reasons, I find that the [defendants] have established that their actions were protected, that the claims against them were meritless and brought solely in response to their protected acts as retaliation, and that the respondent-party plaintiffs failed in any way to meet their burden of showing by clear and convincing evidence that these acts are not immune under the Citizen Protection Act."

¶ 12    On September 17, 2019, the defendants filed a petition for attorney fees and costs directed against the plaintiffs and a motion for sanctions directed against their attorney.

¶ 13    On September 18, 2019, the plaintiffs filed a notice of appeal from the trial court's August 21, 2019, order.

¶ 14    On November 5, 2019, the trial court granted the defendants' petition for attorney fees and costs.    On December 5, 2019, the trial court granted the motion for sanctions against the plaintiffs' attorney.

¶ 15                                             II. ANALYSIS

¶ 16    On appeal, the plaintiffs argue that the trial court erred in dismissing their complaint because questions of material fact remain.    Prior to addressing the merits of the plaintiffs' appeal, we consider Tenner and KNI's argument that the plaintiffs' appeal should be dismissed for their failure to comply with Illinois Supreme Court Rule 303 (eff. July 1, 2017).    We also consider all of the defendants' argument that the plaintiffs' appeal should be dismissed for failing to comply with Illinois Supreme Court Rule 341 (eff. May 25, 2018).

¶ 17    As Tenner and KNI point out, a judgment or order does not become final and appealable while a motion for sanctions remains pending.    Ill. S. Ct. R. 303 (eff. July 1, 2017); *Davis v. Davis*, 2019 IL App (3d) 170744, ¶ 22.    They assert that, because the plaintiffs filed their appeal

before the trial court ruled on the petition for fees and the motion for sanctions, this court does not have jurisdiction to consider their appeal.

¶ 18    Tenner and KNI are correct that the plaintiffs' notice of appeal was premature because of the other claims that were outstanding at the time they filed their notice of appeal.    See *John G. Phillips & Associates v. Brown,* 197 Ill. 2d 337, 344-45 (2001).    However, as the record reveals that those claims have now been resolved, the plaintiffs' notice of appeal is effective.    See Ill. S. Ct. R. 303(a)(2); *Hollywood Boulevard Cinema, LLC v. FPC Funding II, LLC*, 2014 IL App (2d) 131165, ¶ 21 (citing Ill. S. Ct. R. 303, Committee Comments (adopted Mar. 16, 2007)).

¶ 19    We next consider the defendants' argument that the plaintiffs' appeal should be dismissed or their appellate brief stricken (which would also lead to their appeal being dismissed) because the plaintiffs failed to comply with Illinois Supreme Court Rule 341 (eff. May 25, 2018).    The defendants point out that plaintiffs violated Illinois Supreme Court Rule 341 by (1) not submitting a brief that complies with the form requirements as it contains improper margins and includes footnotes that are blank; (2) having an introductory paragraph that contains excessive detail as it consists of over 2½ pages; (3) not including any legal authorities in the points and authorities section; (4) not stating in the introduction (a) whether the judgment is based upon the verdict of a jury, (b) whether any question is raised on the pleadings; or (c) the nature of the question raised on the pleadings; (5) not including a concise statement of the applicable standard of review for each issue; (6) not including an accurate jurisdictional statement; (7) failing to provide a complete statement of facts; and (8) failing to support their argument with citations to the record and supporting legal authority.

¶ 20    The defendants' criticism of the plaintiffs' brief is well-taken.    The supreme court rules governing briefs are not mere suggestions, but are compulsory.    *In re Marriage of Hluska*, 2011

IL App (1st) 092636, ¶ 57. The purpose of these rules is to require the parties to present clear and orderly arguments before a reviewing court, so that the court can properly ascertain and dispose of the issues involved. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. An appellant cannot expect this court to develop arguments and research the issues on the appellant's behalf. See *Northwestern Memorial Hospital*, 2014 IL App (1st) 133008, ¶ 20 ("It is well established that '[r]eviewing courts are entitled to have the issues clearly defined, to be cited pertinent authorities and are not a depository in which an appellant is to dump *** argument and research as it were, upon the court.' " (quoting *In re Estate of Kunz*, 7 Ill. App. 3d 760, 763 (1972))). However, striking a party's brief, in whole or in part, is a harsh sanction and is appropriate only when the violations hinder our review. *Hall*, 2012 IL App (2d) 111151, ¶ 15. As we are able to discern an argument that the plaintiffs make that is supported by some authority, we will consider the merits of their appeal.

¶ 21 Turning to the merits, the plaintiffs assert that the trial court erred in dismissing their defamation suit because they had a valid claim of defamation. The defendants claim that they were immune from suit under the Act because they exercised their protected political rights in mailing the flyers at issue and the plaintiffs' suit was designed to prevent them from further exercising their rights. We agree with the defendants.

¶ 22 A motion to dismiss based upon immunity under the Act is "appropriately raised in a section 2-619(a)(9) motion." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54. A motion to dismiss under section 2-619 admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 13. "When ruling on the motion, the court should construe the pleadings and supporting documents in the light most favorable to the

nonmoving party." *Sandholm*, 2012 IL 111443, ¶ 55. "The court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that may reasonably be drawn in plaintiff's favor." *Id.* "In ruling on a motion to dismiss under section 2-619, the trial court may consider pleadings, depositions, and affidavits." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). "When supporting affidavits have not been challenged or contradicted by counter-affidavits or other appropriate means, the facts stated therein are deemed admitted." *Id.*

¶ 23 We review *de novo* the trial court's dismissal of a complaint pursuant to section 2-619. *Riseborough*, 2014 IL 114271, ¶ 13. The question of whether the Act immunized defendant from suit is also a question of statutory construction, which we review *de novo*. *Sandholm*, 2012 IL 111443, ¶ 41.

¶ 24 The Act was intended to protect individuals from lawsuits designed to prevent them from exercising their political rights, also known as SLAPPs. 735 ILCS 110/5 (West 2018); *Sandholm*, 2012 IL 111443, ¶ 33. The Act accordingly immunizes from liability any "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government \*\*\*, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15 (West 2018). The Act provides that a defendant may move to dismiss a lawsuit "on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government." *Id.*

¶ 25 In *Sandholm,* the plaintiff was a high school athletics director and basketball coach who filed a defamation complaint alleging that a group of individuals had launched an extensive media and letter-writing campaign to have him removed as coach due to their disagreement with him over his coaching style. *Id.* ¶¶ 3-5, 20. After the trial court dismissed the plaintiff's complaint

pursuant to the Act, the Illinois Supreme Court reversed. *Id.* ¶¶ 23, 69. The supreme court limited the Act's application to SLAPPs, which the court defined as lawsuits "solely based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.' " *Sandholm*, 2012 IL 111443, ¶ 45 (quoting 735 ILCS 110/15 (West 2008)). The *Sandholm* court further held that, "where a plaintiff files suits genuinely seeking relief for damages for the alleged defamation [by] defendants, the lawsuit is not" a SLAPP. *Id.*

¶ 26    Three requirements must be met for a lawsuit to be subject to dismissal under the Act:

> "(1) the defendants' acts were in furtherance of their right to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) the plaintiffs' claims are solely based on, related to, or in response to the defendants' 'acts in furtherance'; and (3) the plaintiffs fail to produce clear and convincing evidence that the defendants' acts were not genuinely aimed at solely procuring favorable government action." *Hammons v. Society of Permanent Cosmetic Professionals*, 2012 IL App (1st) 102644, ¶ 18, (citing *Sandholm*, 2012 IL 111443, ¶¶ 53-57).

¶ 27    The defendant bears the burden of proving the first two prongs, after which the burden shifts to the plaintiff to establish the third prong. *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 16.

¶ 28    As to the first prong, the plaintiffs do not dispute that the first prong was established in this case. The defendants' political flyers criticizing the plaintiffs were written in furtherance of their right to speak and participate in government. See *id.* (negative advertisements about an aldermanic candidate satisfied the first prong of the test for the applicability of the Act).

¶ 29     Turning to the second prong, to establish that plaintiffs' suit was "solely based on" the defendants' exercise of their political rights, the defendants must show that the plaintiffs' suit " 'is meritless and was filed in retaliation against [their] protected activities in order to deter [them] from further engaging in those activities.' "  *Id.* ¶ 18, (quoting *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 21).   We first look to whether plaintiffs' suit was meritless, then turn to whether the plaintiffs filed their suit in retaliation to the defendants' publishing the political flyers in question.

¶ 30     A claim is "meritless" under the Act if the defendant "disproves some essential element of the [plaintiff's] claim."  *Id.* ¶ 19.   By contrast, the existence of an affirmative defense does not establish that a plaintiff's claim is "meritless" under the second prong.  *Id.* ¶ 27.   In order to determine whether plaintiffs' suit is meritless in this case, we must examine plaintiffs' defamation claim.

¶ 31     The essential elements of a defamation claim are: (1) that the defendant made a false statement about the plaintiff; (2) that the defendant made an unprivileged publication of that statement to a third party; and (3) that the publication caused damages.  *Green v. Rogers*, 234 Ill.2d 478, 491 (2009).   Truth is a defense to a defamation action and, to establish this defense, the defendant need only show the truth of the "gist" or "sting" of the defamatory material. *Lemons v. Chronicle Publishing Co.*, 253 Ill. App. 3d 888, 890 (1993).   Only "substantial truth" is required for this defense.  *Id.*   While substantial truth is normally a question for the jury, where no reasonable jury could find that substantial truth had not been established, the question is one of law.  *Cianci v. Pettibone Corp.*, 298 Ill. App. 3d 419, 424 (1998).

¶ 32     The defendants argue that statements that they made regarding Brettman are true because they are consistent with (1) what Brettman said in his 1975 grand jury testimony; and (2) how

newspaper articles have described that testimony. Brettman responds that it is improper to rely on that grand jury testimony because it was released in violation of the Grand Jury Secrecy Act (725 ILCS 5/112-1 *et seq.* (West 2018)). As Brettman did not raise this argument in the trial court, he has forfeited his argument and cannot raise it for the first time on appeal. *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15.

¶ 33 Even if Brettman had raised this argument in the trial court, the trial court would have rejected it. This is evident from the trial court's finding that Brettman knew that the defendants' statements about him were true. The Grand Jury Secrecy Act allows for the disclosure of matters occurring before the grand jury if the interests of justice so require. *Board of Education v. Verisario*, 143 Ill. App. 3d 1000, 1009 (1986). Grand jury matters are properly disclosed if they are needed to avoid possible injustice in another judicial proceeding. *Id.* Here, the transcripts of the 1975 grand jury proceedings reveal that the defendants' assertions about Brettman are true. Thus, it would be inequitable for Brettman to have his testimony from the 1975 grand jury proceedings suppressed so that he could argue that the defendants' assertions about him were actually false. *Id.*

¶ 34 Brettman also argues that the trial court improperly dismissed the counts in the complaint that pertained to him because his counter-affidavit raised questions of fact that could not be resolved prior to trial. We disagree. In his counter-affidavit, Brettman asserted two facts: (1) he was not a member of the Legion of Justice and (2) the 1975 grand jury transcripts that were disclosed were incomplete. Brettman's first statement does not contradict the defendants' statements. The defendants asserted that Brettman was affiliated with the Legion of Justice, not that he was a member of the Legion of Justice. As to his second assertion, the fact that part of

the 1975 grand jury transcripts may be missing does not mean that the portion that has been revealed contains anything that is inaccurate.

¶ 35     The defendants claim that the statement they made regarding Schuster that a death threat against a county official was traced to her home is also true.    Relying on her counter-affidavit, Schuster insists that the truth of that statement is still at issue and therefore the trial court improperly dismissed the plaintiffs' complaint.    In her counter-affidavit, Schuster asserted two facts: (1) neither she nor her husband made a death threat against Jack Franks; and (2) the Lakewood police department contacted her and her husband and asked them to submit to an interview regarding a threat posted on the McHenry County blog.    Schuster's first statement does not contradict the defendants' assertion that a death threat was traced to her home.    Her claim that she and her husband did not make a threat is not equivalent to denying that a threat was traced to her home.    Further, her second statement—that the police investigated her and her husband regarding a threat—is consistent with the defendants' allegations and therefore does not raise a question of fact.

¶ 36     As the record supports the trial court's determination that the plaintiffs' claim for defamation was meritless, the next part of our analysis requires us to consider whether the plaintiffs filed their suit in retaliation for the defendants' publishing the political flyers in question.    See *Garrido*, 2013 IL App (1st) 120466, ¶ 18.    We need not delve into this issue, however, because the plaintiffs have not presented any cogent argument on appeal that its complaint was filed for any reason other than retaliation against the defendants.    See *Hall*, 2012 IL App (2d) 111151, ¶ 12 ("Mere contentions, without argument or citation to authority, do not merit consideration on appeal.").

¶ 37    As the plaintiffs' complaint was meritless and retaliatory, the burden thus shifts under the Act to the plaintiffs to demonstrate that defendants' acts were not solely aimed at procuring favorable government action. *Sandholm*, 2012 IL 111443, ¶ 56.    Once again, however, the plaintiffs have not presented any cogent argument that the defendants' political flyers were not solely aimed at procuring favorable government action.    As such, any challenges to the trial court's ruling on this point is forfeited.    *Hall*, 2012 IL App (2d) 111151, ¶ 12.

¶ 38    Accordingly, as the plaintiffs have not proved by clear and convincing evidence that the defendants made their statements for any reason other than to procure a favorable government outcome, we conclude that the defendants were immune from suit under the Act and the trial court did not err in dismissing the plaintiffs' complaint.

¶ 39                                      III. CONCLUSION

¶ 40    For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

¶ 41    Affirmed.